# Loal Williams, Defendant in Error, v. R. F. Henkle, Plaintiff in Error.

1. ARBITRATION AND AWARD, § 64*—*when party estopped from claiming that award is void.* Where a plaintiff, who has agreed to submit matters in dispute to arbitrators, appears before them after the time fixed in such agreement as the time when the award should be made and takes part in the proceeding, he cannot maintain that the award made thereafter is void as not having been made within the time fixed.

2. ARBITRATION AND AWARD, § 64*—*when parties estopped from litigating matters passed on in award.* Parties to an agreement to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

arbitrate, *held* precluded from litigating further the matters considered and passed upon in the arbitration.

3. PARTNERSHIP, § 417*—*when face value of shares of stock properly charged against partner.* In a suit for an accounting between partners who had turned their stock of merchandise over to a corporation, *held* that the face value of shares of stock which had been received by a partner from the corporation, in part payment of the stock, should be charged against him.

4. PARTNERSHIP, § 417*—*when partner should not be charged with face value of shares of stock.* In a suit for an accounting between partners who had turned their stock of merchandise over to a corporation, *held* that a partner should not be charged with the face value of stock subscribed by him and sold by him where the notes received therefor were turned over to the partnership and by it turned back to the partner and charged to him on the books of the partnership.

5. PARTNERSHIP, § 417*—*when partner should not be charged with face value of corporate stock.* In a suit for an accounting between partners who had turned over their stock of merchandise to a corporation, *held* that stock subscribed by a partner and turned back to the corporation by him in payment of the difference between the face value of the total stock issued in payment of the merchandise and the inventoried value of such merchandise should not be charged against him unless he be credited with the face value of the stock.

6. PARTNERSHIP, § 417*—*when partner should be charged only for price received for corporate stock.* In a suit for an accounting between partners who had turned their stock of merchandise over to a corporation in return for the corporation's stock, *held* that stock issued to a party who did not take it up, but which was taken up by a partner, who sold it to another party, should, there being no contention of fraud or bad faith in the transaction, be charged to such partner only at the price he received for it.

7. PARTNERSHIP, § 422*—*when personal decree may be rendered against partner in suit for accounting.* In a suit for an accounting, before a personal decree can be rendered against a partner there must be a complete adjustment of the partnership accounts, leaving nothing for subsequent settlement.

Error to the City Court of Canton; the Hon. HARRY C. MORAN, Judge, presiding. Heard in this court at the October term, 1915. Reversed and remanded. Opinion filed April 21, 1916.

JESSE HEYLIN, for plaintiff in error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

A. E. Taff, for defendant in error.

Mr. Justice Thompson delivered the opinion of the court.

Upon the hearing on the bill of Loal Williams for an accounting of the partnership affairs of Williams & Henkle with his former partner, R. F. Henkle, the trial court sustained an exception of defendant and overruled other exceptions to the report of the master. The sum of $291.76 was found to be due from defendant to complainant and a decree entered for that sum against the defendant with an order for an execution. The defendant has sued out a writ of error to review that decree.

There is no dispute over the following facts. On March 1, 1908, complainant and defendant formed a partnership, under the firm name of Williams & Henkle, to conduct a retail implement and harness business. Henkle put into the business a stock of goods of the value of $3,800. Williams put nothing into the business. They were to share profits and losses equally. Williams was the manager of the business and agreed to devote all his time to it. Henkle appears to have kept the books. In December, 1911, the partnership was dissolved by selling the stock of merchandise inventoried at $7,782.20 to the Fulton Farmers' Co-Operative Company, a corporation.

On December 5, 1911, Williams, Henkle, G. M. McMillan and B. F. Barnes made the following agreement, the last four paragraphs of which are very ambiguous:

"That whereas the said parties hereto, for the purpose of organizing a company to be known as the Farmers' Co-Operative Co., the same to be incorporated with capital stock of $12,000.00 and named as above, and for the purpose of conducting an implement, vehicle and harness business, propose taking over the present stock of Williams & Henkle amounting

to Seventy-seven hundred eighty-two and 20-100 ($7,782.20) Dollars and continue the business under the name adopted and to be incorporated *under therefore.*

"It Is MUTUALLY AGREED between all parties hereto that Loal Williams subscribe for $500.00 stock and the same shall be deducted from the amount of the original invoice from Williams & Henkle and be treated as $500.00 fully paid up capital stock of the Farmers' Co-Operative Company and B. F. Barnes subscribes for $500.00 stock which said amount shall also be deducted from the amount of the invoice from Williams & Henkle and considered as $500.00 fully paid up capital stock of the Farmers' Co-Operative Company, that G. M. McMillan subscribe for $3,500.00 of the Farmers' Co-Operative Company, giving his personal note to Williams & Henkle for the same, and the same shall be treated as fully paid up stock of the Farmers' Co-Operative Company, that R. F. Henkle subscribe for $3,500.00 capital stock of the Farmers' Co-Operative Company and the same shall be considered fully paid up capital stock of the said Company making in all a total amount subscribed and fully paid up $8,000.00.

"It Is FURTHER MUTUALLY AGREED between all parties hereto that the said Farmers' Co-Operative Company shall be incorporated with capital stock of $12,000.00 in shares of $100.00 each, and that stock shall be sold as rapidly as possible for the welfare of the said Company and that subscriptions for stock be paid to R. F. Henkle, as the same are subscribed and paid in, to amount of $3,000.00 and that stock for the $3,000.00 shall be issued to the subscribers from the stock of said R. F. Henkle and his holdings reduced in that amount.

"It Is FURTHER MUTUALLY AGREED that all amounts received on stock subscriptions in excess of $3,000.00 shall be applied on the note given by said G. M. McMillan to Williams & Henkle until the further amount of $3,000.00 shall have been applied on said note, and the stock for said amount shall be issued from the stock of the said G. M. McMillan and reduce his hold-

ings of stock in the amount so sold making the hold-ings of McMillan, Loal Williams, B. F. Barnes and Henkle $500.00 each. The remainder, or $4,000.00 of capital stock to be sold and the funds paid into the treasury of the Farmers' Co-Operative Company as the same is received.

"It Is Further Understood and Agreed that R. F. Henkle and G. M. McMillan shall each pay into the treasury of the Farmers' Co-Operative Company the sum of $108.90 out of subscriptions for stock received by them which said amount so paid in making $217.80, is the difference between the invoice price and the stock of merchandise $7,782.20, of Williams & Henkle and $8,000.00 the amount of stock issued under this agreement.

"It Is Further Agreed that there shall be paid out of the business of the said Farmers' Co-Operative Company six per cent. interest on the sum of $8,000.00 computing interest from this date to such time as pay-ments are made and until the whole amount of $8,000.00 is paid into the treasury of the Farmers' Co-Operative Company."

The evidence shows that eighty shares of capital stock were issued to the parties to the agreement. Of the stock so issued, $500 was issued to Williams and charged to him on the partnership books; $3,500 was issued to Henkle; $3,500 was issued to McMillan, for which he gave his note to the partnership; and $500 was issued to Barnes. McMillan testified that he paid his note of $3,500 and interest. Williams & Henkle paid face value for the $8,000 of stock issued for the merchandise sold to the corporation, when the $217.80 was returned.

Barnes did not pay for the stock subscribed for by him and it was reissued to Henkle. Henkle testified that the stock issued to him was only taken by him as security for debts of the partnership for which he was personally liable and because Williams was not finan-cially responsible. He also testified that ten shares of the McMillan stock were sold for $1,000; that fifteen

shares of the stock issued to him were sold to third parties for $1,500; that he sold twenty-two shares of the stock issued to him, including the stock subscribed by Barnes, to McMillan for $2,000; that he conveyed to the corporation two shares on the $217.90 difference between the $8,000 of capital stock and the stock of merchandise brought from the partnership, and that he still has one share. He gave the names of the purchasers of the fifteen shares and the number of shares sold to each. These parties gave notes for the par value of the stock sold to them. Notes to the amount of $1,300 made by these parties dated March 3, 1913, for the respective amounts of stock severally taken by them are charged to Henkle on the books of the partnership on that date.

No reason is presented why McMillan should pay into the treasury of the corporation $108.90, one-half the difference between the $8,000 stock issued in payment of the merchandise of the value of $7,782.20 bought of the partnership. McMillan had no interest in the partnership. Williams, the partner, naturally should have repaid one-half of said sum to the corporation and counsel for complainant state he did pay his half.

Williams and Henkle disagreed about the settlement of some of the partnership matters and on March 28, 1913, they executed an agreement under which they "mutually agree to submit all their matters in difference of every kind and character concerning the partnership affairs of the undersigned doing business as Williams & Henkle as well as all other matters to the determination and award of  *  *  *  as arbitrators to hear and determine the same and make their award in writing on or before the 7th day of April, 1913, *  *  *  a majority finding of the arbitrators shall be binding on the parties hereto."

There is nothing in the submission from which it can be discovered what were the matters in difference between Williams and Henkle. On May 15, 1913, the

arbitrators made an award, which from its tenor is only an audit of the books and accounts and an allowance to Henkle of $650 as extra compensation. While, ordinarily, extra compensation is not allowed to partners for services in winding up a partnership, it may be allowed under special circumstances. *Maynard v. Richards,* 166 Ill. 483; 30 Cyc. 697.

It is contended on behalf of Williams that the award of the arbitrators is void because it was not made within the time limited in the submission. The record shows that Williams appeared before the arbitrators after April 7th, and took part in proceedings before them, without making any claim that the submission was revoked. By such action he consented to the action of the arbitrators after the time limited by the submission. The parties are precluded from litigating further the matters considered and passed upon in the arbitration. *Buntain v. Curtis,* 27 Ill. 374; *Merritt v. Merritt,* 11 Ill. 565.

The award makes no mention of the stock of merchandise on hand at the time of the dissolution, or of the capital stock received for such merchandise from the corporation, further than charging complainant with $500 of the stock, which had been charged to him on the books of the partnership. One of the arbitrators testified that neither the stock on hand at the time of the dissolution, nor the capital stock received for it, was considered in the arbitration, but only the items charged to the partners. It does not appear from the record that there was any controversy over the capital stock received for the sale of the merchandise at the time of the arbitration. The controversy concerning the disposition of the capital stock, and the collection of notes and accounts has arisen since that time, and with the question of whether the award is binding on the parties, appears to be the only matters concerning which they disagree.

The master in stating the account starts with the

balance sheet made by the arbitrators to April 3, 1913:
"Accounts of R. F. Henkle:

Cash merchandise and notes charged    $7,115.41

Credits, including Howard stock at $3,800  $7,198.28

"Accounts of Loal Williams:

Cash and merchandise charged $3,203.56

Five Shares Fulton Farm Stock  500.00   $3,703.56

Credits                            $ 667.00"

The master then undertakes to state the transactions occurring since April 3, 1913, in winding up the partnership. In doing so he charges Henkle with $3,500, the face value of the capital stock subscribed by him and applied on the sum due the partnership from the corporation. From the evidence it appears, $1,300 of the $7,115.41 cash, merchandise and notes charged to Henkle were notes charged to him March 3, 1913, which had been taken for the sale of thirteen shares of the thirty-five shares of the capital stock issued to him. Counsel for Henkle argue that fifteen shares of the stock had been sold and the proceeds charged to him in the award. We do not find in the report of the arbitrators two of the $100 notes, which were taken for two shares of the stock, charged to Henkle. Henkle should not be charged with the capital stock and also notes taken for stock charged to him, unless he is given credit for the return of the stock, which does not appear to have been done.

The agreement states that the holdings of stock of the four signers were to be reduced to $500 each. Henkle should be charged with that amount at its face value. He should not be charged with any of the $3,500 of stock subscribed by him which was sold and the notes turned over to the partnership, and by the partnership turned over to Henkle and charged to him on the books of the partnership, nor should he be charged with any of that capital stock returned to the corporation in payment of the $217.80 unless he is credited with such payment. The question of whether

he should be charged by the partnership with what the remainder of the $3,500 of stock which was sold to McMillan was sold for, or its face value, has not been argued and we express no opinion concerning that question.

The $500 of stock issued to Barnes was not paid for, and this was resold to McMillan by Henkle. He should only be charged with what was actually received on the sale of these five shares, unless bad faith is shown in the transaction.

The decree does not settle the rights of the parties. The bill was filed February 19, 1914. The master reported from the evidence presented that it is impossible to state the account between the parties subsequent to January 8, 1914, and that at the time of making the report there were numerous accounts due the partnership which should be collected, and both parties testified that there are outstanding accounts which should be collected. The decree entered adjudges that the "defendant herein is indebted to the said Loal Williams as of, and on January 8, 1914," although the bill was filed February 19, 1914.

On a bill for an accounting between partners, it is not proper to render a personal decree against one partner for the excess of his receipts over his disbursements until his interest in the firm assets has first been exhausted (*Rosenstiel v. Gray,* 112 Ill. 282); there should be a complete adjustment of the partnership accounts and a disposition of all partnership property leaving nothing for subsequent settlement. (*Randolph v. Inman,* 172 Ill. 575; 15 Encyc. of Pl. and Pr. 1105.) One partner cannot maintain an action against his co-partner for an accounting as to particular items or transactions, but partners may make a partial settlement by arbitration at any time. 30 Cyc. 687.

The complainant should take the necessary steps and make such proof as will enable the court to fully settle the partnership, otherwise the bill should be dismissed.

The decree is reversed and the cause is remanded because of the errors indicated.

*Reversed and remanded.*