RONALD HILDEBRAND, Plaintiff-Appellee, v. ROBERT TOPPING, Defendant-Appellant.

First District (3rd Division)  No. 1—89—2452

Opinion filed December 9, 1992.

Jerome Marvin Kaplan, of Batler & Schwartz, of Buffalo Grove, for appellant.

John P. DeRose, of.John P. DeRose & Associates, of Burr Ridge, for appellee.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Ronald Hildebrand, filed a petition for an accounting seeking an accounting from defendant, Robert Topping, arising out of their relationship in two partnerships, Goldcrest Apartments Limited Partnership and Dixon Apartments General Partnership. After the trial, the court entered judgment in favor of Hildebrand, ordering Topping to pay Hildebrand $142,624.37. The order also provided that Hildebrand receive the full amount plus accumulated interest on deposit with American National Bank in a designated escrow account. The trial court retained jurisdiction for the purpose of overseeing the final windup of the partnership affairs, final accounting, and the sale of the Dixon Apartment Building. This appeal is taken pursuant to Supreme Court Rule 304 (134 Ill. 2d R. 304).

On appeal, Topping asserts that (1) this court lacks jurisdiction because the circuit court's order was not final and appealable, and (2) the trial court erred in ordering him to pay Hildebrand prior to the court determining a final settlement of the partnership accounts.

Hildebrand and Topping began their professional relationship in 1963 when Hildebrand serviced Topping's account at the Chicago Title and Trust Company, where Hildebrand was an attorney. In 1966, Topping started his own business, Country Squire Builders, and Hildebrand incorporated the business. Hildebrand performed accounting duties, bookkeeping duties, and prepared individual and business income tax returns for the Toppings and Country Squire Builders. For the services he rendered, Hildebrand regularly invoiced Topping and Country Squire Builders.

In 1968, Topping purchased two parcels of real estate in Forest Park, Illinois, at 7411 Dixon and 320 Circle, with the intention of building multi-unit apartment buildings. The land was purchased and the project financed with construction loans.

A 62-unit building called the Goldcrest Apartments was built at 320 Circle, Forest Park, Illinois. Topping was the general contractor for the construction. Title was held in a land trust, whose sole beneficiary was the 320 Corporation. When the building was completed, a limited partnership was formed in 1969 and later amended in 1970. The amended agreement indicates that Topping was the general partner with a 48.11% interest. There were 21 limited partners, including Hildebrand and his wife, who held a 10% interest.

■ Topping received his interest in consideration for his contribution of the land and construction of the building. Hildebrand and Topping agreed that Hildebrand was to receive an $8,000 credit against his capital contribution for legal and accounting work he had previously performed on behalf of the partnership. The Illinois Uniform Partnership Act (Ill. Rev. Stat. 1983, ch. 106½, par. 1 *et seq.*), however, prohibits services as the contribution of a limited partner. (Ill. Rev. Stat. 1983, ch. 106½, par. 47.) Hildebrand paid $1,500 toward his capital contribution. There was no evidence that any of the other limited partners were consulted about the arrangements between Hildebrand and Topping.

A 35-unit building called the Dixon Apartments was built at 7411 Dixon, Forest Park, Illinois. Title was held in a land trust and Topping was the general contractor for the construction. The 7411 Corporation was formed to hold the beneficial interest in the trust. On January 5, 1969, the Dixon Apartments Partnership was formed as a general partnership, with Topping holding an 89.1% interest, Hildebrand a 9.9% interest, and the 7411 Corporation a 1% interest. The beneficial interest in the land trust was transferred to the general partnership. The partnership agreement provides for no specific dollar amounts for the capital contributions of Hildebrand and Topping. Topping testified that he and Hildebrand made oral agreements as to amounts to be contributed and credits to be given.

From 1968 through May 1981, Hildebrand acted as the accountant and managing partner of both partnerships. He designed and maintained the general ledgers and journals of both partnerships until May 1981. At the end of each year, he prepared a profit and loss statement, a balance sheet, partnership K-1's and tax advisory information for each of the partners and the partnerships' State and Federal tax

returns. For the legal, accounting, and tax work he performed for both partnerships, Hildebrand rendered regular invoices.

There was no written documentation regarding the amount of fees that Hildebrand should receive for his services. According to Topping, Hildebrand's annual charges were not to exceed $2,500 for Goldcrest and $2,000 for Dixon. Hildebrand, however, contended that those figures were merely an estimate he gave for his 1968 work. Hildebrand's notes from an August 1970 meeting between the two men indicated that the amounts were to increase until they reached $250 per month. There was a disagreement whether Hildebrand was to charge the partnerships for management services and bookkeeping or whether those services were to be performed by the on-site managers. There was no evidence that any of the limited partners was ever consulted regarding Hildebrand's charges to Goldcrest.

Some cash transactions were not reflected in the partnership books. These included rent receipts and expenditures by the on-site manager, Thomas Wood.

In May 1981, Topping demanded and received the surrender of the books and records for both partnerships. From that point, Topping managed both partnerships and buildings. There was extensive testimony and evidence presented regarding Topping's and Hildebrand's services, charges, and use of the partnerships' funds.

In 1981, Hildebrand filed a petition for accounting for both partnerships and sought return of personal effects, including books and records. Topping filed his answer and counterclaim, seeking dissolution and an accounting for both partnerships and an accounting by Hildebrand and payment of certain sums taken by Hildebrand.

The trial lasted over a year. The trial court heard extensive testimony and examined hundreds of pages of exhibits. The trial court indicated that some of the evidence was difficult to follow and that Hildebrand's bookkeeping methods were very confusing. He also stated that both parties were responsible for neglect and unorthodox practices.

The trial court ruled in favor of Hildebrand on his complaint and against Topping on his counterclaim. The trial court entered judgment against Topping for $142,624.37, and the full amount plus accumulated interest on deposit with the American National Bank in escrow account No. 14004801. The trial court retained jurisdiction to oversee "the final wind up of partnership affairs, final accounting and the sale of the Dixon Apartments Building." The judgment was appealed pursuant to Supreme Court Rule 304. 134 Ill. 2d R. 304.

On appeal, Topping asserts that this court lacks jurisdiction because the circuit court order was not final and appealable pursuant to Supreme Court Rule 304. Although the necessary language is present in the order, Topping argues, it was still not final or appealable.

■ A final and appealable judgment is one which terminates the litigation and disposes of the rights of the parties either on the entire controversy or on some definite and separate part of it. (*Bloom v. Landy* (1979), 72 Ill. App. 3d 383, 396.) The fact that an order contains the necessary language cannot confer appellate jurisdiction if the order is in fact not final. (*Crane Paper Stock Co. v. Chicago & Northwestern R.R. Co.* (1976), 63 Ill. 2d 61, 66.) Instead of bestowing finality on a judgment or order, the special finding pursuant to Supreme Court Rule 304(a) simply makes appealable a final order in a suit with multiple parties or multiple claims. (*Bloom*, 72 Ill. App. 3d at 395-96.) To determine whether an order is final and appealable requires analysis of the precise nature of the conflict between the parties and the effect that the judgment in question will have on that conflict. *In re Estate of Tingos* (1979), 72 Ill. App. 3d 703, 709.

Notwithstanding the special language in the order requiring Topping to pay $142,624.37 to Hildebrand, the order is not final and appealable. It is intertwined with the final accounting that is still pending in the trial court. We agree that this case cannot be decided without a full examination of the partnership accounts.

Closely related is Topping's assertion that the trial court erred in ordering him to pay Hildebrand any amount of money prior to the court determining a final settlement of the partnership accounts. Although the amended complaint was for an accounting and dissolution, the trial court entered an order for Topping to pay a certain amount to Hildebrand and specifically retained jurisdiction for final windup and a final accounting. Topping claims that the order was really a money judgment, not a partial accounting. Furthermore, Topping indicates, the trial court made no findings regarding Topping's claims against Hildebrand or the respective capital accounts of all of the partners nor determined how profits and losses should be allocated between the partners, except to disallow interest to Hildebrand.

■ Topping relies on numerous cases that cite the general rule that one partner cannot sue a copartner on a matter concerning the partnership until there has been a final settlement of the partnership accounts. (See *Frink v. Ryan* (1841), 4 Ill. 322, 326; *Schlossberg v. Corrington* (1980), 80 Ill. App. 3d 860, 866, *Mayhew v. Craig* (1929), 253 Ill. App. 238, 241.) These cases are not directly applicable because

they explain that the rule applies to cases at law. Here, the claims were for accounting and dissolution brought in chancery court.

The general purpose of this rule was stated in *Mayhew*, as follows:

> "(1) a dispute of this nature ordinarily involves the taking of a partnership account, for, until that is taken, it cannot be known that plaintiff is not liable to refund even more than he claims in the particular suit; (2) in partnership transactions a partner does not as a rule become a creditor or the debtor of a copartner, but of the firm." *Mayhew*, 253 Ill. App. at 241.

■ The rationale for the general rule is applicable. The rationale behind the general rule is that the resolution of disputes between partners on partnership matters usually entails a complete accounting in order to ascertain that the partner who claims some amount from his copartner is not liable to his copartner in connection with other partnership debts. (*Mayhew*, 253 Ill. App. at 241.) In line with that rationale, the court in *Balcor Income Properties, Ltd. v. Arlen Realty, Inc.* (1981), 95 Ill. App. 3d 700, 702, found that the better rule is that a partner or partnership can bring an action against a copartner only if the plaintiff's claim can be decided without a full review of the partnership accounts.

■ Furthermore, an action for an accounting cannot generally be brought until the partnership has been dissolved even though a joint action for dissolution and accounting is proper. (*Korziuk v. Korziuk* (1958), 13 Ill. 2d 238, 242.) When a petition for an accounting is brought, it is not proper to render a personal decree against one partner until there is a complete adjustment of the partnership accounts and a disposition of all partnership property leaving nothing for subsequent settlement. (*Williams v. Henkle* (1916), 201 Ill. App. 362, 370.) Furthermore, one partner cannot maintain an action against his copartner for an accounting as to particular items or transactions. *Williams*, 201 Ill. App. at 370.

■ Although Hildebrand did not file an action for a partial accounting, that was the effect of the trial court's order. The lack of extended findings makes this court's review more difficult. Because there are findings on some of Hildebrand's initial claims but not Hildebrand's other claims or Topping's counterclaims, it is unclear whether the order was a personal judgment against Topping or a partial accounting. The order does, however, specifically retain jurisdiction for a future final accounting and windup of the partnership affairs.

If the order is a money judgment against Topping, it was inappropriate under the general rule that one partner cannot sue a copartner on a matter concerning the partnership until there has been a final settlement of the partnership accounts. (See *Frink*, 4 Ill. at 326; *Balcor*, 95 Ill. App. 3d at 702; *Schlossberg*, 80 Ill. App. 3d at 866.) If it was a partial accounting, it was inappropriate to render a personal decree against one partner until there is a complete adjustment of the partnership accounts and a disposition of all partnership property leaving nothing for subsequent settlement. *Williams*, 201 Ill. App. at 370.

Hildebrand did not address the issues of jurisdiction or the lack of a final accounting. Instead, he claims that the trial court properly denied the motion for dissolution. Although the second order appealed from was a denial of dissolution, Topping did not raise that issue on appeal.

We conclude that the circuit court's order requiring Topping to pay $142,624.37 to Hildebrand is closely intertwined with a complete, final accounting of the partnerships. Therefore, it is necessary for the trial court to determine a final settlement of the partnership accounts.

Based on the foregoing, this cause is remanded to the circuit court for a full accounting.

Remanded.

GREIMAN, P.J., and TULLY, J., concur.