KLEIN ET UX, TO OWN USE AND USE OF BALTIMORE
EQUITABLE SOCIETY FOR INSURING HOUSES FROM
LOSS BY FIRE *v.* DOUGHERTY ET AL.

[No. 152, October Term, 1951.]

*Decided April 4, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*Norman C. Melvin, Jr.,* with whom were *Cook, Ruzicka, Veazey & Gans,* on the brief, for appellants.

*Thomas G. Andrew,* with whom was *Walter R. Tabler, Jr.,* on the brief, for Allied Oil Burner Service, appellee.

Submitted on brief by *Herbert L. Grymes* for Andrew Dougherty, appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment rendered by the trial judge, sitting without a jury.

The appellees have filed in this case a motion to dismiss the appeal for the reason that the appellants have failed to include in their appendix as required by Rule 39, sec. 1 (e) of this Court "such parts of the record as he desires the Court to read." In the very recent case of *Lane Manor Corporation v. Byers,* 199 Md. 406, 86 A. 2d 731, in which we dismissed the appeal on this ground, we pointed out the following: "Appellee has filed a motion to dismiss the appeal in this case for failure of the appellant to comply with Rule 39 of this Court. *Strohecker v. Schumacher,* 185 Md. 144; *Sunshine Laundry Corp. v. White,* 197 Md. 582, 80 A. 2d 1. As pointed out by Chief Judge Marbury in the case of *Strohecker v. Schumachér, supra,* when Rule 36 of this Court was passed, doing away with the necessity of printing the record on appeal, it was done with the intention of decreasing the cost of appellate litigation. That rule, in addition to other things, requires that in the appendix of appellant's brief should be printed such part of the record as appellant desires the Court to read. There must be sufficient parts of the testimony printed to enable us to pass upon the question raised. In the case of *Sunshine Laundry Corporation v. White, supra,* cases involving Rule 39 were reviewed and this Court there reiterated that the appellant must print the testimony material to the issue or issues raised." In the *Lane Manor* case questions of estoppel and credibility of witnesses were raised and there we were of opinion that the appellant had not printed in his appendix sufficient of the evidence in the transcript to pass upon those points.

In the instant cases we think that the testimony material to the issues here raised is printed in the appellant's brief. There are, however, reasonable grounds for difference of opinion on that point. In the case of *Kenny v. McAllister,* 198 Md. 521, 525, 84 A. 2d 897, 899, Judge Markell explained the rule as follows: "Appellant contends that appellees should be required to pay the cost of printing, in appellant's appendix, repetiti-

ous matter at the demand of appellees and on their threat to move to dismiss the appeal if the demand were not complied with. The short answer to this contention is that Rule 39 does not require the appellant to print anything the appellee may demand. In *Sunshine Laundry Co. v. White,* 197 Md. 582, 80 A. 2d 1, and in the other cases we have held that it is not sufficient for the appellant to print garbled bits of testimony or parts otherwise clearly inadequate to present the questions which appellant asks us to review. We have also imposed on appellees cost of duplicated printing in appellees' appendix. *Martin v. United Slate, Tile & Composition Roofers,* 196 Md. 428, 442, 77 A. 2d 136, 142. But Rule 39 recognizes that there may be room for reasonable difference of opinion as to what should be printed and permits the appellee to print anything not printed by the appellant. We do not undertake to decide in every case just how much should have been printed. When there is reasonable ground for difference of opinion, we would not dismiss the appeal for not printing, even though we might not impose the cost of printing on the appellee." There are no appendices to the appellees' briefs in this case. The appellees also, to support their motion to dismiss, rely on the fact that appellants did not supply them with a statement of the parts of the record they proposed to print with their brief, as required by Rule 39, Section 2. Appellants say that this was an oversight on their part. Appellees do not state in their motion that they received appellants' appendix too late to enable them to supplement it in their briefs. Of course, appellees should have been furnished with this information within ten days after the filing of the transcript of the record in this Court. We are of opinion that appellees have not been so prejudiced as to justify a dismissal of the appeal, especially since there seems to be little dispute about the facts in this case. Compare *Naughton v. Paul Jones & Co.,* 190 Md. 599, 605, 59 A. 2d 496.

Milton Klein and wife constructed a home on Wirt Avenue in Baltimore. He acted as general contractor and let subcontracts for the various phases of the work. When the furnace was installed by Mr. Andrew Dougherty, the smoke pipe was put in a hole in the chimney without a hole being cut through the tile lining of the chimney. When the furnace was started by Allied Oil Burner Service there was no way for the smoke to escape in the chimney. When Mr. Klein, the appellant, drove by the house he saw smoke coming from an exhaust vent in the kitchen. Upon investigation it was found that the interior of the house was covered with soot. As a result, the equitable plaintiff paid the Kleins $1,100.-00, and suit was entered against the appellees on a declaration containing a count in contract and a count in tort. The trial judge found that all the parties in the case were negligent and finding the plaintiffs, appellants here, guilty of contributory negligence, a judgment was rendered in favor of the defendants, appellees. From that judgment the appeal is here.

Appellee, Dougherty, was hired to put in the furnace, the details having been left to him. The brick mason had installed a flue lining in the chimney and had left a hole in the bricks for the smoke pipe, about four or five feet above the floor level. The flue lining was cemented to the sides of the chimney and no air could get up between the chimney and the lining. The brick mason did not cut a hole through the tile lining and there was testimony that there was no difficulty in seeing the tile lining through the hole. There was testimony in the case from a Mr. Parr, who had been in the heating and plumbing business for fifteen years, that he had never found a job where the tile lining was cut through. He said that the brick contractor leaves an opening and the man who puts the smoke pipe up cuts through the tile lining. Although disputed, the trial judge found that a thimble had been installed in the chimney. This is a metal sleeve installed in the hole to accomodate the smoke pipe. If the thimble was in-

stalled it came out about three inches beyond the chimney wall and the distance from the beginning of the hole for the smoke pipe to the tile was seven or eight inches. If the thimble was not installed the distance from the beginning of the hole to the tile was the thickness of one brick or approximately four inches.

Mr. Dougherty testified that Mr. Klein took him to the house, showed him where the furnace was to be placed, the chimney, and the hole for the smoke pipe. The cellar at that time had no lights and was dark. When Mr. Dougherty installed the furnace he had no flashlight and the cellar was dark. He said he could not see into the chimney whether the flue lining had been cut through. He said it would have been necessary for him to have felt in the chimney four or five inches to have found that the tile lining had not been cut through. He ran the smoke pipe about two inches in the hole and as the tile lining had not been cut through, there was no draft and no place for the smoke to escape in the chimney.

Mr. Klein testified that Mr. Dougherty estimated the furnace for them and he hired him to install it, leaving the details of the work entirely to him. Mr. Klein said he pointed to the place where the smoke pipe was to be put. He did not know that the flue lining had not been cut. He further said he had built several houses and in none of those did the brick contractor cut through the tile flue lining. This was done by the person who installed the furnace. He said he was driving by the house on a Sunday, he thought a day after the oil burner was started, and saw black smoke coming out of the exhaust fan and out of the doorway from the kitchen. He went in the house and found it completely blackened by soot or dust from the cellar to the top floor. He then called Mr. Crouse, a partner in the Allied Oil Burner Service.

Mr. Crouse said he went out to the house on Sunday, November 6, 1949, and immediately removed the smoke pipe at the base of the chimney at the thimble and

saw a blank wall in front covered with soot. He said in that condition there would be a draft through the furnace with the burner operating, but instead of going up through the chimney the smoke went out through the stabilizer. He said when Mr. Burke, who was their employee, started the burner he was smoking a cigarette and there was sufficient draft through the furnace and around the blow pipe to pull the smoke in while the burner was operating. Mr. Burke had to prime the pump, start the burner, and adjust the fire. There was no packing around the blow pipe. He left the burner going, came in to the shop, and returned to the job approximately an hour later and packed around the blow pipe. He said Mr. Burke should have checked the fan control, and should have checked the safety. Together with correcting a mistake the electrician had made in the wiring, Mr. Burke was gone, he believed, an hour and a half or two hours, which Mr. Crouse thought was the proper amount of time, "to try to see everything was all right."

Mr. Craig, another partner of Allied, testified that the furnace and oil burner were all installed when they first went on the job. On October 6, 1949, Allied installed the oil tank, connected the oil line to the burner and "ran filling vent". On November 1, 1949, they had a call from Mr. Klein to turn on the furnace. Mr. Burke turned it on. When he went out with his partner on Sunday, the 5th or 6th of November, they saw there wasn't any draft for the fire so they pulled the smoke pipe out of the thimble and found the tile lining had not been broken through.

Mr. Parr further testified that in starting an oil burner, the safety controls have to be checked. "You check the draft from the color of your flame. * * * if you do not have proper flame you do not have proper combustion. There's instruments to be used in checking the draft." When asked the question: "When a furnace is started up and you open the furnace door and look at the color of the flame can you see whether there is any

draft?", he answered: "Yes". He further testified that he could not install a pipe in a chimney without seeing that it was open or closed. A furnace man was bound to see that a furnace had the proper draft.

The trial judge found that there was abundant proof of negligence on the part of the defendants. He further found that Mr. Klein knew that the tile liner in the chimney had not been opened. He had built other houses before this one and in those houses the tile liner of the chimney was not opened by the brick mason, but by the man who installed the furnace. Because he did not communicate that fact to Mr. Dougherty, or did not contract with Mr. Dougherty to knock out that liner and it was not specifically mentioned between them, the trial judge found he was guilty of contributory negligence as to Mr. Dougherty. He further found that as Mr. Klein had employed Allied to go out to his empty house and start the furnace and had not checked to see whether there was anything wrong until he happened to drive by the place and saw the smoke, he therefore was guilty of contributory negligence as to Allied.

We agree with the finding of the trial judge that the appellees were negligent. It was recently said in the case of *Otis Elevator Company v. Embert,* 198 Md. 585, 597, 84 A. 2d 876, 881: "The absence of tort liability for breach of contract is not qualified by the distinction between nonfeasance and misfeasance. In such cases such a distinction is not between non-performance and 'mis-performance' of a contract, but only between conduct, in breach of a contract, which constitutes only a breach of contract and conduct which also constitutes a breach of duty, arising out of the nature of the work undertaken and the conduct * * *." There is no doubt in this case that Mr. Dougherty undertook to install the furnace and connect the smoke pipe to the chimney so that the smoke from the furnace would go up the chimney. There is also no doubt that Allied undertook to install the oil tank, connect the oil line to the burner, run the filling vent, prime the pump, start the burner, adjust the fire,

and check the fan and safety controls. There was credible testimony that there were instruments to be used in checking the draft and that the color of the flame showed whether there was sufficient draft. Both Mr. Dougherty and Allied were negligent in their undertaking. Neither of these exercised such care as a qualified person would ordinarily have exercised under the circumstances of this case. *Jackson v. Penna. Railroad Co.*, 176 Md. 1, 5, 3 A. 2d 719, 120 A. L. R. 1068. The damage which might be caused by oil burning in a furnace with no outlet for the smoke is by no means small. At least reasonable care and precautions were necessary in this case.

We are, however, unable to agree with the learned trial judge that Mr. Klein was guilty of contributory negligence. Of course, the burden of proving such contributory negligence was on the appellees. *Goldman v. Johnson Motor Lines, Inc.*, 192 Md. 24, 31, 63 A. 2d 622. Mr. Dougherty was in the plumbing and heating business and had worked for Mr. Klein before. It was the usual custom for the man who installed the furnace and put in the smoke pipe to cut the hole in the chimney lining. With a light the tile was plainly visible, being at the most seven or eight inches from the beginning of the hole. If there had been a light it hardly seems possible that in placing the smoke pipe in the hole in the chimney the tile would not have been seen. If Mr. Dougherty saw fit to do this work in the dark, without even a flashlight, he was under a duty to exercise a higher degree of care. *People's Drug Stores, Inc. v. Windham*, 178 Md. 172, 184, 185, 12 A. 2d 532. We see no obligation on the part of Mr. Klein to have specifically instructed Mr. Dougherty to cut the hole in the lining.

We also see no obligation on the part of Mr. Klein to have inspected to see whether Allied had properly turned on the furnace. Allied was in the business of installing oil tanks, connecting the oil lines, priming the pump, adjusting the fire, checking the controls and

starting furnaces. Mr. Klein had no reason to believe, under all the evidence in the case, that this undertaking would not be properly carried out and that inspection of its work was required. We are of opinion that an ordinary person would not have exercised such care under the circumstances of this case. This negligence on the part of Allied was not to have been anticipated by Mr. Klein under the facts here. *Morgenstern v. Sheer,* 145 Md. 208, 217, 125 A. 790; *Chalmers v. Tea Company,* 172 Md. 552, 555, 192 A. 419; *Flint & Walling Mfg. Co. v. Beckett,* 167 Ind. 491, 79 N. E. 503, 12 L. R. A., N. S., 924. The judgment will therefore be reversed.

*Judgment reversed with costs, and judgment entered for the appellants for $1,100.00, with costs.*