MARTIN MARIETTA AGGREGATES ET AL. *v.* CITIZENS
FOR THE PRESERVATION OF THE SOUTH MOUN-
TAIN-ANTIETAM ENVIRONMENT ET AL.

[No. 302, September Term, 1978.]

*Decided December 8, 1978.*

The cause was argued before MORTON, DAVIDSON and LISS, JJ.

*John H. Urner* and *William P. Nairn,* with whom were *Byron, Moylan & Urner* on the brief, for appellants.

*Robert E. Kuczynski* and *Mary Anne Day* for appellees.

LISS, J., delivered the opinion of the Court.

To characterize this case as a "highly controversial" one in Washington County, Maryland is probably the understatement of the year. On the one side of the issue are the appellants, Benevola Farms, Inc., David Litton, Sr., and Martin Marietta Aggregates Corporation, who were perceived by the court below as having a common interest in the controversy and as acting in concert with each other as to the use of the property which is the subject matter of this dispute. We shall adopt the position of the trial court on this phase of the matter and shall make no effort to unravel the complex series of deeds, leases, and options which established the respective interests of the parties. The appellees are Citizens for the Preservation of the South Mountain-Antietam Environment, a nonprofit unincorporated association, and the individual adjoining property owners who have joined in this proceeding.

In 1975, Martin Marietta Aggregates was the operator of a quarry pit located on a fifty-eight-acre tract owned by Benevola Farms, Inc. in Election District Six of Washington County. The operation included storage of stockpiles, a plant building office, equipment and scales used in the extraction of Tomstown dolomite stone. The stone was utilized in an asphalt, concrete and cement plant owned by Richard F. Kline, Inc., located in close proximity to the quarry pit. The quarry and asphalt plant were served by a road running from Benevola Church Road. It is conceded that the quarry and asphalt plant had been in operation for a long period of time before the adoption of the Washington County Zoning Ordinance, and that the classification of the quarry under that Ordinance was "Industrial Mining."

Immediately adjoining the fifty-eight-acre tract was an unimproved tract of eighty-five acres owned by David Litton, Sr., which was zoned as "Agricultural" land and used for farming purposes by the owner. By a series of transactions, Martin Marietta Aggregates obtained an option to purchase the eighty-five acres provided the land could be classified "Industrial Mining." A petition was filed, in proper form, with the County Commissioners for Washington County in which

the petitioners sought to rezone the eighty-five-acre tract from "Agricultural" to "Industrial Mining." The area surrounding the two tracts is a mixture of farmland and single family residences. On May 25, 1976, the County Commissioners, after a hearing, denied the petition for rezoning. The appellants appealed that decision to the Circuit Court for Washington County.

On July 15, 1976, while the appeal from the denial of the petition for rezoning was still pending in the Circuit Court, Martin Marietta Aggregates filed a petition, in proper form, with the Washington County Board of Zoning Appeals for a special exception in which it sought permission to operate a mineral extraction enterprise on the eighty-five-acre tract adjoining their existing quarry operation.

The applicants presented by testimony and exhibits a plan for the integration of the eighty-five-acre tract into the existing quarry operation on a step-by-step basis commencing with the granting of the special exception and concluding with the reclamation of the property in approximately the year 2011. The plan was drawn in conformity with the provisions of Article 22, Section 22.3 of the Washington County Zoning Ordinance. It contemplated moving the existing stockpiles of stone onto the eighty-five-acre tract, improving of the herm area (the area where top soil and unusable material are mounded) with the planting of pines, and constructing a sediment and erosion control pond and drain. The applicant produced testimony that as the existing quarry pit expanded the stockpiles on the adjoining property would be expanded until a maximum pit area of thirty-four acres would be attained. Thereafter, in approximately 1991, the applicant would begin reclamation of the existing quarry, would move the plant, office scales and equipment onto the property for which the special exception was sought and would begin to excavate a pit near the south end of the property which would ultimately cover twenty-nine acres of the eighty-five-acre tract. The development of this pit would occur through the 1991-2011 phase of the development plan. It was stated that at maximum development the proposed quarry operation

would be no closer than 1450 feet to residences presently existing.

Extensive hearings were held before the Board of Appeals, and on September 2, 1976, the Board granted the special exception. The Board gave the following reasons for granting the special exception:

1. That Article 6, Section 6.2(f) allows the Board to decide on a special exception for extractive type industries, subject to the requirements of Section 22.3.

2. That the proposed special exception shows no increase or intensification of the effects of a quarrying operation on the lives or property of people residing in the area. The plans call for a transitional move from one site to another with no immediate or sudden increase in the volume of business. The Board finds that the net effect of such a plan will not substantially differ from the present minimal effect of the quarry on the area. Section 25.6 (Limitations, Guides & Standards)

3. That the area's growth and population will not be adversely effected by the transitional plan for the special exception. Section 25.6 A & B

4. That the volume of truck traffic will not be substantially increased. The appellant requested at the hearing that a meeting be held with County representatives so as to alleviate truck traffic west of the quarry. Section 25.6c

5. That the transitional or phased plan for the special exception use will not deprive people of the peaceful enjoyment of their homes (Section 25.6d) or lower property values (Section 25.6e)

6. That the proposed special exception is an appropriate use of the land. (Section 25.6g) It is adjacent to the existing quarry, and contains extensive deposits necessary for a quarrying operation. It is located in a rural area of the County

outside of the urban type growth of larger communities. Section 6.0 (Purpose)

The appeal for a special exception as provided for in Section 6.2(f) of the Ordinance is granted for the implementation of the transition or phase-type plans submitted at the hearing, subject to all present requirements of the Ordinance, including Section 22.3. The appellant or their representative is directed to meet with County agencies within 30 days from the date of this decision to seek to alleviate or prohibit truck traffic west of the quarry on Benevola Church Road to Alt. Rt. 40 and also on Toms Road.

The appellees appealed to the Circuit Court for Washington County, and after a preliminary hearing, the court remanded the case to the Board of Appeals to take testimony to replace that portion of the record that was not preserved at the original hearing because of a failure of the recording device. After a rehearing, the Board of Appeals affirmed its original decision to grant the special exception sought by Martin Marietta. Appellees again appealed to the Circuit Court, and the trial judge, after hearing extensive argument and considering the record of both proceedings before the Board of Appeals, reversed the action of the Board on the ground that the Board had no jurisdiction to hear and decide the petition for a special exception in view of the pending appeal of the denial of the petition for rezoning. The trial judge in his opinion said:

The appellant protestants [appellees herein] argue that the Board of Zoning Appeals should not have received the application for a special exception while the rezoning decision concerning the same premises was on appeal to the Circuit Court. The Court agrees for the reasons stated hereafter.

\* \* \*

When the appellees [appellants herein] first sought to change the use of the subject property

they had a choice of two approaches. They could seek rezoning of the land in question under Article 27 of the Zoning Ordinance or they could seek a special exception under Article 6 of the Ordinance. The rezoning approach was elected and it was argued to the County Commissioners that there had been a mistake in the original zoning classification and that there had been a substantial change in the character of the neighborhood which justified the rezoning requested. The request was denied and that decision was appealed.

While that appeal was pending the appellees sought a special exception from the Board of Zoning Appeals and argued that the zoning classification was correct and that they were qualified for a special exception under it. The Court is of the opinion that once the rezoning request was pursued to a decision the appellees could not then elect to pursue the special exception route.

Article 27.6 of the Zoning Ordinance states that once reclassification has been denied another such application dealing with the same land shall not be accepted for filing for twelve months. To permit the appellees to follow the special exception route would have the effect of nullifying Article 27.6. It would allow the administrative body, the Board of Zoning Appeals, to substitute its judgment for that of the legislative body, the County Commissioners, and it would permit the appellees to argue mistake in zoning in the reclassification case and correctness of zoning in the special exception case. Further, to permit such a dual approach permits a multiplicity of actions and places a substantial financial burden upon the protestants. They must oppose the rezoning at the Commissioner level and on appeal and at the same time oppose the special exception application before the Board of Zoning Appeals and on appeal. A party with superior resources could thus prevail over a party with limited resources

through a multiplicity of litigation and that does not serve the ends of justice.

. Once the appellees have made an election between rezoning and special exception and have pursued their election to a decision they cannot revert to the other.

It is from the judgment of the court below reversing the Board of Appeals that this appeal was filed.

The issues to be decided by this appeal are:

1. Did the trial court err in its conclusion that the appellants' pending appeal of the denial of its petition for rezoning by the County Commissioners of Washington County was a bar to its attempt to secure a special exception under the Washington County Zoning Ordinance?

2. Assuming, arguendo, that the proceeding for a special exception before the Board of Appeals was not barred, should the Court consider and affirm the Board's action in this case?

In order to decide the controversy between the parties in this case, it is necessary that we consider the provisions of the Washington County Zoning Ordinance which became effective in that County on April 2, 1973. By its terms, the Ordinance adopted a plan for the County, a developmental analysis plan map and certain stated policies.

The Ordinance divided the powers to be exercised under its terms between the County Commissioners and a Board of Appeals created by the Ordinance. The Commissioners were charged with the responsibility of considering all applications for rezoning including proposals for amendment, change, modification, and repeal. Article 27, Section 27.1.

By Article 27, Section 27.3, the County Commissioners, before rendering a decision on the granting of a request for change, are required to consider certain criteria which are set out in that section. As we have already noted, the County Commissioners had before them an application for rezoning in this case, on which a hearing was held. They denied that

application and refused to rezone the subject property. Article 27, Section 27.6 provides:

> An application for a reclassification shall not be accepted for filing by the Board of County Commissioners if the application is for the reclassification of the whole or any part of land the reclassification of which has been opposed or denied by the Board of County Commissioners on the merits as herein above provided within twelve (12) months from the date of the Board's decision.

The duties and powers of the Board of Appeals established by the Washington County Zoning Ordinance are found in Article 25.

Section 25.2 of Article 25 states that in addition to its power to hear and decide appeals where it is alleged that there is error in any order made by an administrative official in the enforcement of the Ordinance, the Board has the power:

> (a) * * *

> (b) To hear and decide special exceptions to the ordinance upon which the Board is required to pass.

> (c) To authorize, upon appeal in special cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions, the enforcement of the provisions of this ordinance will result in unwarranted hardship and injustice and which will most nearly accomplish the purpose and intent of the regulations of the Zoning Ordinance.

Article 25, Section 25.6 outlines the limitations, guidelines and standards which the Board is required to consider in exercising its general powers under the Ordinance. Section 25.7 provides that if an application [for special exception or variance] is disapproved, thereafter the Board shall take no further action on another application for substantially the same proposal on the same premises, until twelve months have elapsed from the date of disapproval.

The trial judge held and the appellees urge that when the County Commissioners refused to grant rezoning of the tract here in dispute, the denial divested the Board of Appeals of jurisdiction to consider the application for a special exception for twelve months from the date of the refusal of the petition for rezoning. We do not agree and shall reverse.

2 E. C. Yokley, Zoning Law and Practice Section 15-4, at 143 (3d ed. 1965) states that "an exception is a permission given by the board, properly authorized by ordinance in specific cases, for an applicant to use his property in a manner contrary to the provisions of an ordinance, provided such use subserves the general welfare and protects community interests."

The author distinguishes between a special exception and rezoning when he notes that the latter "involves a change in the law effectuated by legislative body of the municipality . . . where general conditions [have] changed so as to require a fundamental revision of the zoning ordinance:" Yokley, *supra,* Section 11-1, at 88 (4th ed. 1978).

There is obviously a substantial difference between a change in the basic zoning law effectuated by the legislative body of a municipality and a special exception to the requirements of the law permitted to be granted by a zoning board of appeals. As land is zoned by ordinance passed by a legislative body, the necessary and proper procedure for rezoning land is by ordinance passed by the appropriate legislative body. An applicant's right to a special exception is predicated upon his compliance with the safeguards enumerated in the portion of the zoning ordinance which establishes the existence of the right. It is for the board to determine whether conditions exist which make the case an appropriate one for the granting of the exception, and whether there is legally competent evidence to support a finding that the granting of the exception is not adverse to the public interest.

A "special exception" is also to be distinguished from a "variance" where the literal enforcement of the zoning ordinance would result in unnecessary hardship. The Court of Appeals made the distinction between a "special exception"

and a "variance" when, in *Montgomery County v. Merlands Club,* 202 Md. 279, 96 A. 2d 261 (1952), it said:

> It is the common practice to join an application for an exception with an application for a variance, leaving it to the board to decide on which ground it will grant the application. As a result, many cases discuss exceptions and variances without differentiation, yet the two do differ, and one important distinction is that where a specific use is permitted by the legislative body in a given area if the general zoning plan is conformed to and there is no adverse effect on the neighborhood, the application can be granted without a showing of hardship or other conditions which are necessary for the allowance of a variance. *Id.* at 288-89.

A reading of the Washington County Zoning Ordinance makes it crystalline that the legislative body of that county followed the legal principles we have here stated. It provides that rezoning is reserved for the legislative body. It defines a special exception in Article 28, Section 28.57 as follows: "[a] grant of a specific use that would not be appropriate generally or without restriction; and shall be based upon a finding that the use conforms to the plan and is compatible with the existing neighborhood."

Article 6, Section 6.2 states that a special exception may be granted by the Board of Appeals of the county after a public hearing. The provision enumerates those uses which may be the subject matter of a grant of special exception, and subsection (f) of 6.2 specifically authorizes the operation of extractive type industries subject to the requirements listed in Section 22.3 of the Ordinance. Those requirements are as follows:

> In all districts excepting the "IM" District, excavations and processing of products thereof, other than in conjunction with building or highway construction or the stripping of sod, shall be subject to the following:
>
> (a) Any building housing power-driven or power-producing machinery or equipment shall be

located at least two (2) times the distance requirements specified in Section 4.9.

(b) Extractive operations shall be confined to areas of a minimum of fifty (50) feet from all adjoining property lines in any agricultural, residential, or business district or any public road right-of-way, and one hundred (100) feet from any then existing principal building on an adjoining property except that such minimum distances shall be increased on a ratio of two (2) feet for each foot of excavation depth above twenty-five (25) feet, provided that the Board finds that approaching with such distances will not damage the adjoining property of said principal building.

(c) Prior to issuance of any zoning permit indicating approval, reclamation and/or restoration plans must be submitted to and approved by the Planning and Zoning Commission, and satisfactory bond or other guarantee shall be furnished the County Commissioners to insure provisions of adequate fencing and the restoration of the extractive operations by regrading, drainage or other required treatment during or at the completion of the operation.

Appellees rely heavily on *Tyrie v. Baltimore County,* 215 Md. 135, 137 A. 2d 156 (1957) as authority for the trial court's conclusion that the denial of Martin Marietta's application for rezoning precluded a petition for a special exception for twelve months from the date of denial. A careful examination of that case, however, shows that it is distinguishable on the facts from the case *sub judice.*

In *Tyrie,* the Court found that the County Commissioners of Baltimore County were involved in a rezoning of the entire county. The Commissioners adopted new regulations that amplified and refined the zoning structure—particularly the granting of special exceptions.

The existing provision [of the zoning law] that no new application for a change of zoning of the same

property could be filed for eighteen months from the denial of reclassification was replaced by a regulation that for the same period of time forbade a new application for *either reclassification or special exception* "in any case which had been considered and acted upon." (emphasis supplied.) *Id.* at 137-38.

The Court of Appeals, in determining the legislative intent, also said:

> . . . we must consider the tests that have been set up to aid proper reading in doubtful cases. These include not only consideration of the literal or usual meanings of the words used but their meaning and effect considered in the light of the setting, the purposes of the enactment, the ends to be accomplished, and the consequences that may result from one meaning rather than another. *Id.* at 140.

*See Scherr v. Braun,* 211 Md. 553, 128 A. 2d 388 (1956).

In *Tyrie,* the Court decided that the amended provision went to the jurisdiction of the Board, and that within the period specified the Board was without power to act on a reapplication. *Nuova Realty Co. v. City of Baltimore,* 197 Md. 266, 78 A. 2d 765 (1950).

Applying the test stated by the Court of Appeals in *Tyrie* to the zoning ordinance here under consideration, we are convinced that it was not the intention of the legislative body to require an election between proceeding by way of rezoning and by way of special exception. It is evident that the Ordinance creates two different avenues to achieve a change in the particular use of a property. It vests the legislative body of the County with the power to change the zoning of a property, and permits an administrative tribunal to grant an exception within the framework of the existing zoning classifications. The standards to be considered by the respective bodies in exercising their powers differ substantially. There is nothing specifically stated in the Ordinance to prevent the owner from petitioning for rezoning and a special exception at the same time and, indeed, we can

visualize a number of instances in which it would be necessary to secure both a rezoning of land and a special exception in order to achieve a particular use of the property. If, as argued by the appellees, the intention was to divest jurisdiction for a twelve-month period from each of the bodies by a denial of relief by either one of them, it would have been simple to so state as was done in *Tyrie.* To the contrary, the Ordinance goes to great pains to spell out the jurisdictional time period in two separate sections of the Ordinance without in any way relating the sections to each other.

The principle of construction set forth in *Schweitzer v. Brewer,* 280 Md. 430, 374 A. 2d 347 (1977) is, we think, controlling. It was there said:

> If reasonably possible the parts of a statute are to be reconciled and harmonized, the intention as to any one part being found by reading all the parts together, and none of its words, clauses, phrases or sentences shall be rendered surplusage or meaningless. Results that are unreasonable, illogical or inconsistent with common sense should be avoided whenever possible consistent with the statutory language. *Id.* at 438-39.

We conclude that the only reasonable construction to be given to Section 25.7 of the Zoning Ordinance is that a second identical application for a special exception for the same land may not be considered by the Board until a twelve-month period dating from a denial of the original application for exception has expired. Similarly, under Section 27.6, a second application for rezoning of the same land may not be considered by the County Council until the expiration of a twelve-month period from the denial of the first rezoning application. We perceive nothing in these sections which inhibits the right of the County Commissioners or the Board from considering simultaneous applications for rezoning and/or special exceptions, and we do not believe that a denial of rezoning prevents the Board from assuming jurisdiction of a petition for special exception within the succeeding twelve-month period or in the converse that a denial prevents

the County Commissioners from considering a petition for rezoning because of the denial of a special exception within that period. Nor does the appeal to the Circuit Court of the County Commissioners' refusal to rezone change the conclusion we reach. These proceedings are separate and distinct. They are governed by different guidelines which attempt to reach two different goals. We think the trial judge erred in holding the Board of Appeals had no jurisdiction to grant the special exception.

Appellants urge that if we rule that the Board of Appeals had jurisdiction to hear and decide the special exception case that we proceed under Maryland Rule 1085 to decide whether the Board's action was proper under the law. We shall decline to do so. While it is correct that the merits of the decision of the Board were argued in the trial court, the judge did not reach that issue because of his conclusion on the question of jurisdiction. We express no opinion on whether the record contains such substantial evidence as to make the Board's determination fairly debatable. The trial judge did not consider and decide that issue. In addition, the appellees argue that the record is clear that the Board displayed bias against the appellees in its predetermination, before hearing, that it had jurisdiction in the special exception case, and that it acted arbitrarily, capriciously, and with prejudice toward the appellees. The trial judge made no decision on this argument. We think it is proper that the court below hear such further argument as it concludes is appropriate and reach a decision on these issues.

We have considered the motion to dismiss filed by the appellees on the ground that the appellants refused to cooperate in agreeing on the portions of the record to be included in the printed extract. The disputed portions were printed under the procedure provided in Rule 1028 c.2. and Rule 1028 d. We think there were reasonable grounds for a difference of opinion, and that a dismissal of the appeal would not, under these circumstances, be appropriate. *Klein v. Dougherty,* 200 Md. 22, 87 A. 2d 821 (1951). We conclude, as well, that *Kemp-Pontiac-Cadillac, Inc. v. S. & M. Construction Co.,* 33 Md. App. 516, 365 A. 2d 1021 (1976) contemplates that

in the absence of prejudice to the appellees or a deliberate violation of the rules, that a dismissal of the appeal should not be granted. We find no justification for a dismissal and shall deny the motion.

> *Judgment reversed; case remanded for further proceedings; costs to be paid by appellees.*