**PACIFIC INDEMNITY COMPANY, As subrogee of Antoine and Emily van Agtmael, Plaintiff,**

v.

**Clay H. WHALEY, individually d/b/a C.H. Whaley & Son, Inc., Defendant.**

**Clay H. Whaley, individually d/b/a C.H. Whaley & Son, Inc., Third–Party Plaintiff**

v.

**Compton & Sons, Third–Party Defendant.**

**Civil No. JFM 07–826.**

United States District Court, D. Maryland.

Aug. 25, 2008.

MD, Sean P. O'Donnell, Cozen and O'Connor, Philadelphia, PA, for Pacific Indemnity Company.

Robert Leigh Hebb, Eric Michael Leppo, Semmes Bowen and Semmes PC, Baltimore, MD, for Clay H. Whaley.

Betty Sue Diener, Marks O'Neill O'Brien and Courtney PC, Towson, MD, for Compton & Sons.

## MEMORANDUM OPINION

J. FREDERICK MOTZ, District Judge.

In a Memorandum Opinion I issued on June 16, 2008, I denied third-party defendant Compton & Sons' motion for summary judgment. *Pac. Indem. Co. v. Whaley*, 560 F.Supp.2d 425, 427 (D.Md.2008). Compton & Sons ("Compton") has moved for me to reconsider two of my conclusions: (1) that the economic loss doctrine does not shield Compton from tort liability; and (2) that third-party plaintiff Whaley's indemnification claim must survive summary judgment because plaintiff Pacific Indemnity Company's complaint did not specifically allege that Whaley was actively negligent.[1] (Compton Mem. at 2–4). For

Thomas M. Wood, IV, Neuberger Quinn Gielen Rubin and Gibber PA, Baltimore,

---

1. Compton also requests that I reconsider my conclusion that Compton owes a tort duty to the van Agtmaels. (Compton Mem. at 3.) In my June 16, 2008 Memorandum Opinion, I cited the following language for the Maryland rule that contractual privity is not required to establish a tort duty: " 'The requirement of privity of contract has been abandoned as a basis for recovery by third parties for physical harm to themselves and tangible things against those who negligently supply, repair, or construct things so as to leave them in an unreasonably dangerous condition.' " *See Pac. Indem. Co.*, 560 F.Supp.2d at 430 n. 6 (quoting *Council of Co–Owners Atlantis Condo., Inc. v. Whiting–Turner Contracting Co.*, 308 Md. 18, 517 A.2d 336, 341 (1986)). As Compton correctly points out, no unreasonably dangerous condition existed in the instant case. However, I had meant this cita-tion only for purposes of making clear that contractual privity is not required to establish a tort duty. I should have also cited the following language from the same case: "In following the modern trend, we hold that privity is not an absolute prerequisite to the existence of a tort duty." *Whiting–Turner*, 517 A.2d at 343.

 Under Maryland law, whether a tort duty should be recognized in a particular context depends on "two major considerations": (1) "the nature of the harm likely to result from a failure to exercise due care," and (2) "the relationship that exists between the parties." *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 515 A.2d 756, 759 (1986). "Where the failure to exercise due care creates a risk of economic loss only, courts have generally required [contractual privity or its equivalent] between the parties as a condition to the

the reasons that follow, I will deny Compton's motion for reconsideration.

## I.

The economic loss doctrine "prohibits a plaintiff from recovering in tort for purely economic losses—losses that involve neither a clear danger of physical injury or death, nor damage to property other than the product itself." *Morris v. Osmose Wood Preserving*, 340 Md. 519, 667 A.2d 624, 630 (1995). The Maryland Court of Appeals has further explained that "[e]conomic losses include such things as the loss of value or use of the product itself, the cost to repair or replace the product, or the lost profits resulting from the loss of use of the product."[2] *A.J. Decoster Co. v. Westinghouse Electric Corp.*, 333 Md. 245, 634 A.2d 1330, 1332 (1994).

In my June 16 Memorandum Opinion, I concluded that the "product" that Compton was providing was the replacement of the van Agtmaels' roof, and thus that the economic loss doctrine does not shield Compton from tort liability because the physical damage in the instant case was to property other than the roof under construction. *Pac. Indem. Co.*, 560 F.Supp.2d at 430 n. 6. Compton argues that I erred in reaching this conclusion, contending that the "product" was the van Agtmaels' entire house, and thus that "all of the damages in the [instant] case are economic loss damages, including but not limited to the roof, the walls, the ceilings, the floors, the utilities, and the contents." (Compton's Mot. for Recons. at 1.)

## A.

The majority of the Maryland cases that have addressed the economic loss doctrine are not helpful in resolving whether the damages in the instant case constitute property damage or economic loss, because in those cases there clearly had been no property damage.[3] In *Decoster*, however,

imposition of tort liability." *Id.* at 759–60. As I discuss *infra*, because I conclude that Compton's alleged negligence created a risk of (and ultimately resulted in) property damage, rather than purely economic loss, I hold that Compton owes a tort duty to the van Agtmaels notwithstanding their lack of contractual privity.

2. The Maryland Court of Appeals has explained the rationale behind the economic loss doctrine as follows: "A manufacturer may be held liable [under tort law] for physical injuries, *including harm to property*, caused by defects in its products because it is charged with the responsibility to ensure that its products meet a standard of safety creating no unreasonable risk of harm." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 916 A.2d 257, 265 (2007) (citation omitted) (emphasis added). By contrast, *"where the loss is purely economic,* the manufacturer cannot be charged with the responsibility of ensuring that the product meet[s] the particular expectations of the consumer unless it is aware of those expectations and has agreed that the product will meet them. Thus, generally, the only recovery for

a purely economic loss would be under a contract theory." *Id.* (emphasis added).

3. For example, in *Whiting–Turner*, a condominium owners' association brought suit against a general contractor, developer, and architects of their building, alleging that defendants had negligently constructed defective vertical utility shafts in the building. 517 A.2d at 338. Because defendants' alleged negligence had not caused physical harm to any person or property, the Maryland Court of Appeals had to determine whether defendants had any tort duty to plaintiff based solely on the economic loss of reconstructing the utility shafts. *Id.* at 344–45. Recognizing that the economic loss doctrine would normally preclude tort liability, the court carved out an exception from the doctrine, concluding that notwithstanding the lack of personal injury or property damage, where the "risk generated by the negligent conduct ... is of death or personal injury the action will lie for recovery of the reasonable cost of correcting the dangerous condition." *Id.* at 345. Because the court found that the construction defects in the utility shafts created a serious

the Maryland Court of Appeals did address whether the damages sought constituted property damage or economic loss. *Decoster*, 634 A.2d at 1333. The plaintiff, a commercial chicken and egg producer, had suffered loss of more than 140,000 chickens as a result of a power failure that interrupted the power supply to the ventilation system in plaintiff's chicken houses. *Id.* at 1331. Plaintiff filed suit against the manufacturer of the allegedly defective transfer switch, which had failed to activate the emergency backup power system. *Id.* The court explained that "[u]nder *Whiting–Turner*, Decoster's ability to pursue an action in tort against Westinghouse for the loss of its chickens turns upon whether its damages are considered physical harm or economic losses and, if the latter, whether the defective switch caused a dangerous condition creating a risk of death or personal injury to humans." *Id.* at 1333. The court concluded that it

> need not reach the second part of this determination, because the death of the chickens is a loss of physical property, rather than economic loss. Decoster does not seek to recover for the loss of value of the switch, or its replacement or repair costs. Nor does it seek recovery of lost profits from its diminished egg production. These are all economic loss-

es. Instead, Decoster seeks only the replacement of property that was damaged by the alleged defectiveness of the product manufactured by Westinghouse.
*Id.*

 Similarly, in *National Coach Works of Virginia v. Detroit Diesel Corp.*, 128 F.Supp.2d 821, 831 (D.Md.2001), Judge Blake of this court held that, under Maryland law, the purchaser of a bus could recover in tort from the manufacturer of the bus engine for damage to the bus after the bus's engine caught fire and destroyed the bus. The court held that although the economic loss doctrine barred recovery for the engine itself because it was the "defective product," Maryland law "plainly permit[ted]" recovery for "other property" damaged by the engine, including the bus. *Id.* The court relied on the Maryland Court of Appeals' holding in *Decoster*, and the fact that the United States Supreme Court, in *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 880, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997), had cited *Decoster* for the principle that while recovery in tort is not permitted for damage to the defective item itself, recovery in tort is permitted for damage to "items added to or used in conjunction with a defective item...." [4] *Id.*

risk of injury to residents of the building, it allowed recovery in tort to correct those defects.

Since *Whiting–Turner*, the Maryland Court of Appeals has in at least three other cases grappled with the issue of whether—although the alleged negligence of a defendant had not caused personal injury or property damage, but rather only economic loss—the risk of injury resulting from the negligence was serious enough to warrant tort liability. *See U.S. Gypsum v. Mayor & City Council of Baltimore*, 336 Md. 145, 647 A.2d 405, 410 (1994) (holding that the risk of death or injury caused by asbestos-containing building materials was serious enough to warrant tort liability); *Morris*, 667 A.2d at 633 (holding that the risk of

injury caused by defendant's alleged negligence in manufacturing defective plywood used in building houses was serious enough to warrant tort liability); *Lloyd*, 916 A.2d at 270 (holding that the risk of bodily injury because of the alleged negligent manufacturing of defective automobile seats was not serious enough to warrant tort liability).

4. In *Saratoga*, the Supreme Court held that under admiralty law, plaintiff (the second user/owner of a fishing vessel) could recover in tort from the manufacturer of the vessel's allegedly defective hydraulic system for damages to extra equipment added to the ship by the first user/owner of the vessel, because the extra equipment was "other property." 520

**B.**

As Compton correctly points out, the above Maryland case law does not directly address whether a house and its contents are considered "other property" for purposes of determining whether an allegedly negligent roof contractor is liable in tort for damages to them. (Compton Reply at 11.) For this reason, Compton contends that "Maryland law is ripe for a decision that would broaden the scope of what would be considered economic loss" by following what Compton submits is the "modern trend" in economic loss doctrine jurisprudence: precluding tort liability where damage to "other property" was "foreseeable" or where the damaged "other property" was "part of an integrated system." (Compton Reply at 3; Compton Mem. at 5–13.)

In support of the "foreseeability" approach, Compton cites the Eighth and Sixth Circuits for the rule that "tort remedies are unavailable for property damage experienced by the owner where the damage was a foreseeable result of a defect at the time the parties contractually determined their respective exposure to risk, regardless whether the damage was to the 'goods' themselves or to 'other property.'" *Dakota Gasification Co. v. Pascoe Bldg. Sys.*, 91 F.3d 1094, 1099 (8th Cir.1996); *see also Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236 (6th Cir.1994) (applying the economic loss doctrine because it was foreseeable to the parties to the contract that pipes conveying high-pressure steam could explode, and that such an explosion would damage equipment surrounding the pipes).

In support of the "integrated system" approach, Compton cites federal district court opinions for the rule that "damage by a defective component of an integrated system to either the system as a whole or other system components is not damage to 'other property.'" *Superior Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.), Inc.*, 263 F.Supp.2d 140, 145 (D.Mass.2003); *see also Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F.Supp. 1027, 1057 (D.S.C.1993) ("[If] the other property is merely a component part of the overall product itself[,] ... courts uniformly hold that the economic loss doctrine precludes recovery in tort against the manufacturer of the component because the component is integrated into the whole product and the purchaser bargained for the whole product, not merely a component of it."). Compton also cites as support the Maryland Court of Special Appeals' opinion in *Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 923 A.2d 971, 1004 (Md.Ct. Spec.App.2007), *aff'd*, 403 Md. 367, 942 A.2d 722 (2008). In that case, plaintiff contended that the allegedly defective synthetic stucco exterior barrier product in the walls of homes caused damage not just to itself but also to the "substrate," to which it was attached, which consisted of "sheathing and framing." *Pulte*, 923 A.2d at 1003. The Court of Special Appeals upheld the trial court's rejection of plaintiff's argument, agreeing that the barrier product was "part of an 'integrated whole'—a completed home—when the damage occurred, and the damage was, thus, a 'harm to the product itself.'" *Id.* at 1004.

U.S. at 877, 117 S.Ct. 1783. The Court stated:

State law often distinguishes between items added to or used in conjunction with a defective item purchased from a Manufacturer (or its distributors) and ... permits recovery for the former when physically harmed by a dangerously defective product. Thus, the owner of a chicken farm, for example, recovered for chickens killed when the chicken house ventilation system failed, suffocating the 140,000 chickens inside. [*See Decoster*, 634 A.2d at 1330.]

*Id.* at 880, 117 S.Ct. 1783.

I am not persuaded, however, that the Maryland courts would apply the "foreseeability" or the "integrated system" approach to the instant case. Other than *Pulte*, Compton has cited no case in which Maryland has adopted either of these approaches. Further, neither approach can be reconciled with the precise distinctions between the "product" and "other property" drawn by the Maryland Court of Appeals in *Decoster* and Judge Blake in *National Coach*.[5] As for *Pulte*, the Maryland Court of Special Appeals reasonably concluded that in the sale of a new home, the barrier product was part of an integrated whole with the "sheathing and framing" of the home. 923 A.2d at 1003–04. In contrast, here, Compton's construction work on the van Agtmaels' already existing home was specifically limited to the roof, and thus can be far more easily distinguished as the "defective product" from the "other property" in the house, including the house's walls, interior ceilings, floors, utilities, and contents.

### C.

Compton also cites case law applying the economic loss doctrine in defective roofing scenarios in support of its position. (Compton Reply at 6–8.) Two of the cases Compton cites are clearly distinguishable from the instant case. First, in *Jones &*

*Laughlin Steel Corp. v. Johns–Manville Sales Corp.*, 626 F.2d 280, 288–90 (3d Cir. 1980), the court held that, under Illinois law, plaintiff steel mill could not recover in strict tort liability for a defective roof. However, unlike in the instant case, plaintiff sought only economic loss damages "for the failure of the product [the defective roof] to perform as it was expected, as distinguished from injuries to persons or other property caused by a defect in the product." *Id.* at 284. Second, in *Citizens Insurance Co. v. Osmose Wood Preserving, Inc.*, 231 Mich.App. 40, 585 N.W.2d 314, 317 (1998), the court held that the economic loss doctrine applied to preclude liability for damages to real and business property as a result of the collapse of a defective roof. The court explained: "Unlike some jurisdictions, the economic loss doctrine applies in Michigan even when the plaintiff is seeking to recover for property other than the product itself." *Id.* at 316. Because Michigan law on this issue stands in direct contrast to Maryland law, it is of no help in determining whether the van Agtmaels' house was "other property."

At first glance, another case cited by Compton, *Chicago Heights Venture v. Dynamit Nobel of America, Inc.*, 782 F.2d 723, 729 (7th Cir.1986), provides support for its position. There, the Seventh Cir-

---

**5.** I note that the Third Circuit rejected the "foreseeability" and "integrated system" approaches in *2–J Corp. v. Tice*, 126 F.3d 539 (3d Cir.1997). In that case, a purchaser of a pre-engineered warehouse sued the warehouse's manufacturer for negligence, products liability, and breach of contract, alleging that the warehouse collapsed and damaged goods stored therein. *Id.* at 540. The court addressed the issue of "whether property becomes a part of the product itself solely because, after the sale to the initial user, it is foreseeably utilized in connection with the owner's use of the product." *Id.* at 544. The court held:

[I]t seems apparent to us that if the fishing equipment foreseeably added to the ship by the initial user in *Saratoga Fishing* [, 520 U.S. at 880, 117 S.Ct. 1783,] did not become a part of the 'product itself,' it necessarily follows that the inventory foreseeably stored by the initial user in the warehouse here did not become a part of the warehouse itself. Accordingly, we believe that the district court's 'integration' theory in this case is inconsistent with *Saratoga Fishing* and that it follows *a fortiori* from the holding in *Saratoga Fishing* that 2–J can recover for the loss of its inventory and other property stored in its warehouse.

*Id.* at 544.

cuit held that, under Illinois law, defendant was shielded from tort liability for damage to other parts of the building caused by the lack of adequate roofing. Relying on *Jones & Laughlin*, the Seventh Circuit recognized that in that case the plaintiff "did not seek damages for any injury to property other than the roof itself." *Id.* However, the Seventh Circuit "believe[d]" that this distinction-that the plaintiff in *Jones & Laughlin* requested only damages for injury to the product while the plaintiff in *Chicago Heights Venture* requested damages for injury to the other property-would not be considered "legally significant" to the Illinois courts. *Id.* To the contrary, in *United Air Lines, Inc. v. CEI Industries of Illinois, Inc.*, 148 Ill.App.3d 332, 102 Ill.Dec. 1, 499 N.E.2d 558, 563 (Ill.App.Ct.1986), the Illinois Appeals Court expressly held such a distinction *was* legally dispositive. The court held that, under Illinois law, a warehouse owner could recover in tort for damage to a building caused by a defective roof because United "suffer[ed] damages to property other than the defective product as a result of the water leakage defect in the roof which caused the sudden and violent col-

lapse of its interior ceiling upon its walls, furniture and furnishings. United has thus made a showing of harm above and beyond disappointed expectations." [6] *Id.*

For these reasons, I am not persuaded that any of the case law Compton cites provides guidance as to what is "other property" for purposes of the economic loss doctrine in defective roof scenarios under Maryland law.[7]

## D.

■ In light of the Maryland Court of Appeals' decision in *Decoster* and Judge Blake's decision in *National Coach*, I conclude that, under Maryland law, the economic loss doctrine does not shield Compton from tort liability for damages to the van Agtmael's house and its contents, with the exception of the roof itself. Compton was allegedly negligent in replacing the van Agtmaels' roof, and thus is potentially responsible for all damage to "other property" resulting from that negligence, including damage to the house's walls, interior ceilings, floors, utilities, and contents. As I stated in my June 16, 2008 Memorandum Opinion, a subcontractor performing

---

**6.** I recognize that the different decisions in *Chicago Heights Venture* and *United Air Lines* were at least in part a result of the Seventh Circuit's and the Illinois Appeals Court's different interpretations of the Illinois Supreme Court's holding in *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (Ill.1982). While the Seventh Circuit understood *Redarowicz* to preclude liability for damage to other property resulting from a latent construction defect, *Chicago Heights Venture*, 782 F.2d at 729, the Illinois Appeals Court understood *Redarowicz* to preclude liability only for damage to the defective product itself, *United Air Lines*, 102 Ill.Dec. 1, 499 N.E.2d at 562. In any event, the conflict between these two cases demonstrates that Illinois law does not provide clear guidance on what is "other property" where a defective roof has caused damage.

**7.** I recognize also that the Maryland Court of Appeals noted in *Whiting–Turner* that a contractor's tort liability "is in general limited to situations where the conduct of the builder causes an accident out of which physical harm occurs to some person or tangible thing *other than the building itself that is under construction.*" 517 A.2d at 344 (emphasis added). I do not believe, however, that the court's language has any bearing on what is "other property" in defective roof scenarios, because, as discussed *supra*, plaintiff in *Whiting–Turner* did not allege that there was any damage to property other than the product itself. *Id.* Further, the court discussed the building as a whole because the defendants had negligently constructed defective vertical utility shafts in the entire building. *Id.* at 338. In the instant case, by contrast, Compton worked specifically only on the van Agtmaels' roof, not their entire house.

work owes "[a]t least reasonable care and precautions...." *See Pac. Indem. Co.,* 560 F.Supp.2d at 430 n. 6 (quoting *Klein v. Dougherty,* 200 Md. 22, 87 A.2d 821, 825 (1952)). In *Klein,* the court held that defendant subcontractors were liable under tort law for smoke damage caused by their negligent installation of a furnace smoke pipe into a chimney, because "[n]either of [the subcontractors] exercised such care as a qualified person would ordinarily have exercised under the circumstances of this case." *Klein,* 87 A.2d at 824–25. For this reason, and the reasons above, I conclude that if Compton is found to have been negligent, it is responsible in tort for damage to property other than the van Agtmaels' roof itself.

## II.

As to Whaley's indemnification claim, Compton argues again that it should be dismissed "because Whaley committed active negligence, and the plaintiff's complaint alleges active negligence with respect to Whaley." (Compton Mem. at 14.) As I stated in my June 16 Memorandum Opinion, neither of these contentions is accurate. Under Maryland law, if the conduct attributed to the party seeking indemnification in the original plaintiff's complaint constitutes active negligence, or if it is clear from the complaint that this party's liability would only arise from proof of active negligence, then there is no valid claim for indemnity. *Kelly v. Fullwood Foods, Inc.,* 111 F.Supp.2d 712, 714 (D.Md.2000). Pacific Indemnity Company's complaint alleges that the damage to the van Agtmael's property "was caused by the negligence ... of defendant Whaley ... and/or [his] subcontractors...." (Compl. ¶ 18.) The conduct attributed to Whaley in the complaint does not constitute active negligence because the complaint specifically leaves open the possibility that Compton was the actively negligent

party. Accordingly, Whaley's liability could arise from proof of passive negligence. Further, there is a genuine dispute on the summary judgment record as to whether Whaley and/or Compton were negligent, and, if so, whether their negligence was active or passive. *See Pac. Indem. Co.,* 560 F.Supp.2d at 431–32. For these reasons, I held and continue to hold that Whaley's indemnification claim must survive summary judgment. *Id.*

For the foregoing reasons, I deny Compton's motion for reconsideration. A separate order to that effect is being entered herewith.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is, this 25th day of August 2008

ORDERED

Compton & Sons' motion for reconsideration is denied.