Oak Park National Bank, as Trustee, Plaintiff-Appellee, *v.* Village of Norridge, Defendant-Appellant.

(No. 54488;

First District—May 17, 1971.

*Rehearing denied June 8, 1971.*

Bernard J. Hennessy, of Chicago, (Schultz, Hennessy & McGrath, of counsel,) for appellant.

John M. Daley and Jack M. Seigel, of Chicago, for appellee.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This was an action brought by plaintiff, Oak Park National Bank, as Trustee under a land trust, seeking a declaratory judgment that the zoning ordinance of the defendant Village of Norridge was invalid as applied to property in the Village to which plaintiff holds title. After a trial the court entered a "final judgment order" enjoining the Village from enforcing its ordinance to prevent the use of the property as proposed by the plaintiff. Defendant appeals, contending that the evidence adduced by the plaintiff failed to overcome the presumption of validity attending the Village's zoning ordinance and further that plaintiff failed to show that the Village's ordinance was unreasonable and therefore invalid.

The subject property is situated at the northeast corner of Montrose Avenue and Cumberland Avenue in the Village of Norridge. The prop-

erty is irregular in shape, has a frontage along Montrose Avenue of 572 feet, a frontage of 304 feet along Cumberland Avenue, and contains approximately 4.39 acres. The property lies within an area zoned R-1 single family purposes but is presently improved with a horse riding stable, used for the boarding and exercising of horses, which was erected prior to the incorporation of the Village in 1948 and which presently exists as a valid nonconforming use.

The beneficial owner of the property is Larry J. Pontarelli and Sons, Inc., a construction firm, which acquired the property in 1966. Pontarelli desires to construct a multiple-family development on the property consisting of three 10-story buildings, each building having a height of 95 feet with an additional 9 feet allocated for an elevator penthouse. All three buildings combined would contain a total of 72 single-bedroom units and 144 two-bedroom units. Also proposed for the development is a swimming pool and a parking lot to accommodate 324 automobiles.

As stated, the subject property is zoned R-1 single family purposes. Under such zoning classification in the Village the following uses are permitted: single family dwelling units, public libraries, churches and temples, private and public schools and colleges, public parks, police and fire stations, home occupations and accessory buildings. There is a height limitation of 26 feet, except that public buildings, churches, and the like, may be erected to a height not exceeding 60 feet provided they are set back from the property line one foot for each additional foot they are erected over 26 feet. The minimum lot size in the R-1 district is 5,000 square feet with a minimum lot width of 40 feet. Multiple dwellings are permitted in the Village's R-3 zoning districts, but are restricted to buildings 26 feet in height, or two stories.

Pontarelli applied to the Village for a re-zoning of the property from R-1 to R-3, together with an application for variations from the height and density restrictions connected with the Village's R-3 zoning in order to construct the proposed development. After a public hearing the Zoning Board of Appeals of the Village recommended to the President and the Board of Trustees of the Village that the request be denied, and the Village Board concurred. This action was thereupon instituted to enjoin the Village from enforcing its ordinance against the plaintiff.

Cumberland Avenue is a heavily traveled four-lane highway running in a north and south direction; a concrete divider separates the northbound traffic and southbound traffic. At the location of the subject property Cumberland Avenue is the corporate dividing line between the Village on the east and the City of Chicago on the west. Montrose Avenue is a two-lane highway running east and west, except that at a point approximately 750 feet to the east and to the west of the inter-

section with Cumberland Avenue, Montrose Avenue widens to a four-lane highway. Montrose Avenue at the location of the subject property is also the corporate dividing line between the Village on the north and forest preserve grounds lying within the corporate limits of the City of Chicago to the south and southwest. Cumberland Avenue connects with the Kennedy Expressway three miles to the north of the Montrose Avenue intersection.

The forest preserve area in Chicago to the south of Montrose Avenue, both to the east and to the west of Cumberland Avenue, is zoned single family residence, although it is improved with some public recreational facilities. Immediately to the west of the subject property in the City of Chicago, on the northwest corner of Montrose and Cumberland Avenues, lies a vacant tract the approximate size as the subject property; the area in which the vacant tract lies is zoned single family residence and is generally improved as such. Adjoining the subject property on the lower portion of its eastern boundary is a Commonwealth Edison Company transformer station, and immediately east of the subject property are four vacant lots zoned single family purposes.

Immediately north of the subject property are single family residences backing on the subject property. To the north of that area the land is developed single family residence for several blocks. Within that area is another riding stable, a real estate sales office and a bowling alley. To the north of the R-1 district in which the subject property lies is a general business district. To the west of the subject property, about two and one-half blocks to the north and in the City of Chicago, a 200-unit, five story apartment building was under construction at the time of trial.

At trial Larry Pontarelli testified that his company was the beneficial owner of the subject property and that he had been engaged in the construction business since 1929. He testified that he had constructed numerous residential units in and around the Village, and that he constructed many of the single family residences within the zoning district in which the subject property lies. He testified that the subject property was not suitable for a single family development due to the existence of Cumberland Avenue, a busy thoroughfare. *Pontarelli* testified that he did not purchase the property within the intention of developing it as a single family development, and that upon his purchase of the property he canceled the lease running to the stable operator.

John Heinrich testified for the plaintiff that he was an architect and was retained by Pontarelli to prepare plans for the proposed development of the subject property. He estimated the cost of construction of the apartment complex to be between five and six million dollars. Heinrich testified that he took into consideration in the drafting of his plans

the surrounding land uses, the location of the Kennedy Expressway, and the nature of the traffic in the area; he felt that the property was suitable for "medium-size" construction. He also testified that he studied the shadows which would be cast by the proposed buildings and determined that only one building would cast shadows on a nearby garage during the spring and fall months of the year between the hours of 10:00 A.M. and 2:00 P.M.; during the winter months shadows would be cast on residences to the north of the proposed buildings about one and one-half hours of the day.

Heinrich testified that there would be two driveways from the parking lot area running on to Montrose Avenue and that there would be no driveways constructed on to Cumberland Avenue nor any of the other surrounding streets. He stated that 33 percent of the total subject property would be covered by the buildings and the parking area. He also testified that the proposed construction would have no effect on the value of the single family homes in the area. Heinrich stated that the impact upon the local schools would be only five children per one hundred apartment units, since the construction would be most appealable to young couples having either no children or young children and to persons whose children have grown. He also testified that the development of business uses to the north of the subject property will create a demand for such housing in the area.

Richard Manke testified for the plaintiff that he was a real estate broker, appraiser and developer. In his opinion the highest and best use of the subject property was as the use proposed by the plaintiff, a medium-sized apartment dwelling. His opinion was based upon the busy intersection at Cumberland and Montrose Avenues; the changes in the property to the north of the subject property, and to the west in Chicago; the stable on the property being a legal non-conforming use, and the Village's zoning ordinance not containing an amortization clause; the forest preserve to the south and southwest and a cemetery to the southeast of the property, giving rise to an extremely low density of population in the "overall area"; and the fact that a cul-de-sac would have to be built if the property were developed single family residence. The witness placed the value of the real estate under its present use at $400,000; as a single family residence development, at $210,000; and as a development of the proposed nature, at $650,000. He further stated that although the stable would have to remain under its present legal non-conforming use status, it was not in keeping with a residential type area.

From the viewpoint of taxation, the witness testified that the proposed development would benefit the local schools since, based upon a projected increased student enrollment created by the proposed complex, the

amount of $1,500 per additional student would be allocated to the schools from the tax revenue received from the development; the witness, however, did not know where the schools were located.

William Lawrence testified for the plaintiff that he was a city planning and zoning consultant. He testified that the highest and best use of the subject property was as a multiple family development. In arriving at his opinion he took into account the present use of the property, the surrounding uses, the busy intersection at the corner, and the like. He testified that Cumberland Avenue was originally a two-lane highway, but has since been widened to a four-lane highway, and that there is now a trend of development along Cumberland Avenue of greater intensity. He stated that the proposed use provided for adequate space and is residential in character. All ingress and egress to and from the premises would be on to a less traveled street. He was of the opinion that the proposed use would have a beneficial effect on the surrounding properties because of the elimination of the stables.

Lawrence also testified that there are two 12-story apartment buildings located about 12 blocks away from the subject property, and that the Harlem-Irving shopping center, which is located within the Village, is comprised of multiple story buildings.

Roy Gottlieb, a real estate broker, appraiser and developer, testified for the plaintiff. He also was of the opinion that the highest and best use of the property was for multiple family purposes. He detailed the reasons for his opinion, which were much the same as those of the expert witness who testified before him. He also testified that the price range of single family homes which would be built on the property, if developed as a single family tract, would have to be in the mid-40,000 dollar range. His estimate of the value of the property developed as a single family home site was $235,000, but developed as proposed by plaintiff, $575,000, less the cost of razing the existing structures and clearing the land. He also testified that the proposed development would benefit the surrounding homes by the elimination of the stables. He further testified that the property in question enjoyed an advantage as a stable due to its proximity to the nearby forest preserve and its bridle path, and that developed as a stable, the property was worth more than if developed as a single family use.

Leo Wilke, a traffic engineer, also testified for the plaintiff. In his opinion Cumberland Avenue was a major highway, and Montrose Avenue a minor one. He conducted a study which revealed that 27,000 motor vehicles passed through that intersection in a 24-hour period. He investigated the area of the proposed development and was of the opinion that the traffic generated by the development would have a minor in-

fluence on the traffic pattern around the intersection, as well as on the areas at the driveways of the proposed development. He testified that if there were single family driveways on Cumberland Avenue or on Montrose Avenue there would be more opportunity for vehicular conflict and traffic accidents than if the proposed driveways were constructed.

For the defendant, Joseph Sieb, the Village President, testified that approximately 78 percent of the Village is zoned and developed single family dwellings. He testified that the present zoning of the property is in conformity with the Village's concept of a maximum of six families per acre of land, which thereby militates against heavy traffic and noise. Under plaintiff's proposed use, the density would rise to fifty families per acre. The witness admitted that the stable on the subject property was not compatible with the surrounding uses, but stated that the stable was in existence at that location prior to the enactment of the Village's zoning ordinance and for that reason the stable was a valid non-conforming use. Sieb testified that under the Village's present R-3 zoning provisions, 36 families per acre would be permitted. He stated that the Harlem-Irving shopping center contained buildings reaching to a height to 45 to 60 feet.

Richard Roppolo, a real estate broker and appraiser, testified for the defendant. He described the zoning and existing uses around the subject property and was of the opinion that the property was suitable for single family development because of the great demand for such housing in the area. He stated that the use proposed by the plaintiff would adversely affect the adjoining homeowners. He was of the opinion that more people would object to living in an area where a high-rise apartment complex was located than where a stable was located.

Several persons owning homes in the immediate area of the subject property testified for the defendant and opposed the proposed use. In all, thirty-one local homeowners were present in court and ready to testify against plaintiff's proposed use if called.

■■ We are of the opinion that the plaintiff's evidence fails to show that the zoning ordinance of the Village of Norridge is arbitrary and unreasonable as applied to the subject property. The evidence shows only that it would be financially "more desirable" or "more advantageous" for the subject property to be zoned as plaintiff requests. On the contrary, plaintiff's request calls for "spot zoning" and is far afield of the height and density provisions of the zoning ordinance.

■■ A presumption of validity attends a zoning ordinance adopted pursuant to legislative intent. The party attacking the ordinance has the burden of proving, by clear and convincing evidence, that the ordinance is arbitrary and unreasonable, and that it is without substantial relation

to the public health, morals, safety and welfare. *Urann v. Village of Hinsdale,* 30 Ill.2d 10; *Gans v. City of Chicago,* 102 Ill.App.2d 456.

The evidence reveals that the entire area to the east and to the north of the subject property is zoned and developed single family uses. The property to the west, in Chicago, is zoned and developed single family use, and the forest preserve area to the south and southwest, in Chicago, is likewise zoned single family residence, although developed as a public recreational and forest preserve area. It cannot be said that the ordinance bears no relation to the public health, safety, welfare and morals.

The use proposed would result in a density of 44 families per acre more than the restrictions under its present zoning would permit, as well as a height increase of four times that limited by the ordinance under a single family use. The use proposed would also result in a density of 16 families per acre over the limitations imposed under an R-3 zoning, as well as four times the height limitation imposed under R-3.

■■ That the property, if zoned as plaintiff proposes, would have a greater value than if used as presently developed, while a factor to be considered in a request for an alteration in zoning classification, is by no means decisive in determining the reasonableness of the existing classification. (*Jacobson v. City of Evanston,* 10 Ill.2d 61.) Likewise, the fact that Cumberland Avenue is a heavily traveled highway is not, standing alone, decisive. (*Kellett v. County of Du Page,* 89 Ill.App.2d 437.) Plaintiff's evidence falls short of constituting the clear and convincing evidence necessary to rebut the presumption of validity attaching to the zoning ordinance or of proving that the ordinance is arbitrary and unreasonable as applied to the subject property. See also *La Salle National Bank v. City of Chicago,* 68 Ill.App.2d 412; *Reese v. Village of Mount Prospect,* 72 Ill.App.2d 418.

■■ The fact that the property is presently developed as a riding stable does not militate against its continued use as such simply because the property is more valuable if developed as a stable than if developed as a single family use. Plaintiff purchased the property knowing it was a nonconforming use situated in an R-1 single family district. Known also was the fact that all of the property surrounding the parcel was zoned, and for the most part developed, single family use. Had the parcel been improved, for example, with a gasoline filling station rather than a stable, prior to the zoning enactment, development for single family purposes would undoubtedly have been more financially beneficial to plaintiff than its continued use as a filling station. It cannot be said that plaintiff is unjustly deprived of the value of its property due to the present zoning.

As for the argument that the proposed use would eliminate the somewhat odoriferous use to which the property is presently being subjected,

the stable existed at the site many years before the area became populated. The neighboring homeowners purchased their properties with full knowledge of the existence of the stable.

For these reasons the judgment is reversed.

Judgment reversed.

LYONS and GOLDBERG, JJ., concur.