*In re* ESTATE OF DEMOS TINGOS, a/k/a Demosthenis Tingos, Deceased.—
(PETER TINGOS *et al.*, Petitioners-Appellees, *v.* LOUIS J. PREMPAS, Executor
of the Estate of Demos Tingos, Respondent-Appellant.)

First District (2nd Division)   No. 77-1000

Opinion filed May 29, 1979.

Blair & Prempas, of Chicago, for appellant.

Alan Jacobs, of Chicago, for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This is an appeal by an executor from an order entered on May 10, 1977, in a decedent's estate pending since April 1973, ordering the executor to make a partial distribution to two heirs and legatees of decedent, without requiring them to post a refunding bond. The issues are: (1) whether the trial court's order is final and appealable by the executor; and (2) whether the trial court erred in entering the order for partial distribution without requiring a showing that there are sufficient assets to pay claims against the estate and to pay specific bequests, and without requiring a refunding bond. The pertinent facts follow.

Decedent, Demos Tingos, died on January 25, 1973. His will, which was admitted to probate, nominated appellant, Louis J. Prempas, as executor. Letters testamentary were issued to appellant on April 25, 1973. A court order declaring heirship reveals that decedent left the following persons as heirs: his parents, petitioners herein, Peter and Lambrine Tingos; and his sister, Dina Antoniou.

According to the supplemental inventory filed by appellant and approved by the court, decedent left an estate valued at $278,912.76. Decedent's ownership of stock in two closely held corporations, Demos News, Inc., a newstand, and Nordic House, Inc., a restaurant, accounted for $136,000 of that total. The remainder of the estate was composed chiefly of cash, accounts receivable, and other stocks.

Decedent's will provided for the disposition of his assets in the following manner. After directing that his debts and expenses be paid, decedent's will provided for a testamentary trust to pay $10,000 per year for life to his parents, Peter and Lambrine Tingos, or the survivor. The trust was to be funded with an initial amount of $100,000, to be provided from the following assets in the following order: decedent's cash; his stocks other than the stock he owned in Demos News and Nordic House; and the profits earned by Demos News. His will then specifically bequeathed his stock in Demos News and Nordic House and gave the residue of his estate to various persons who are not parties to this appeal. In addition, the will contained a specific bequest of $5000 to the Holy Trinity Church.

During the pendency of the estate, various actions, objections, and citations were filed by persons interested in the estate. Among these were a will contest and a suit to construe the will, filed by petitioners, as well as an $85,000 contested claim, filed by Demetrios Antoniou (claimant), decedent's brother-in-law, which claim was later allowed as a fifth class claim.

On May 5, 1975, petitioners, claimant, and all of the other heirs and legatees except Holy Trinity Church entered into a settlement agreement,

agreeing to dismiss their actions and to renounce their shares under the will. Under the agreement, which was incorporated into a settlement order entered by the court on June 4, 1975, claimant agreed to accept part of his $85,000 claim in cash and the remainder in the form of a note. Petitioners were to receive various stocks and contract rights apparently valued at somewhere between $40,000 and $50,000, over and above a $10,000 payment that had already been made to them under the will for the year 1973. Apparently, however, the stocks were not delivered to petitioners, but were delivered to their then attorney, George Karcazes, with whom they had entered into a one-third contingent fee arrangement and who also represented claimant, among others. For all that appears from the record, attorney Karcazes still holds the stocks that were to be transferred to petitioners pursuant to the settlement order.

Sometime in April 1976, represented by different counsel, petitioners, claimant, and others filed a petition to vacate the June 4, 1975, settlement order pursuant to section 72 of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 72.) The petition alleged *inter alia* that their agreement to the settlement order had been fraudulently procured in that attorney Karcazes had represented conflicting interests, in breach of his duty of loyalty to his clients, and had misrepresented the condition of the estate; that the executor had misrepresented the value of the estate; that the settlement order did not conform to the settlement agreement; and that the parties were not made aware of all this until after the settlement order had become final. The parties prayed that the court vacate the settlement order or conform the order to the agreement. This section 72 petition is apparently still pending, as no indication of its disposition is found in the record.

On February 25, 1977, petitioners filed the instant petition for partial distribution. The petition alleged that petitioners, who are residents of Greece, are the parents of the decedent and, along with decedent's sister, are his only heirs; that petitioners are also legatees under decedent's will, which provides for an annual payment of $10,000 to petitioners or the survivor; that petitioners received $10,000 for 1973, but have received no further payments; that petitioners would be entitled under the will to $10,000 per year for the years 1974, 1975, 1976, and 1977, or would be entitled to 2/3 of decedent's estate if the will were set aside; that petitioners were totally dependent upon decedent for support and said support was continual until decedent's death; that petitioners are 78 and 74 years old, in poor health, without income, assets, or medical insurance, and in need of funds for their support and care; that petitioners have filed a section 72 petition and, pending a decision on the petition, are destitute and in need of funds; that adequate funds are in existence to provide for their care pending the outcome of the proceedings, and they fear that

because of their condition, they will never enjoy any of the funds due them; and that they are entitled to some money no matter what the outcome of the proceedings. Petitioners then prayed that the court order appellant to pay them $40,000, or if such an amount were not immediately available to the executor, that it be paid out of funds set aside pursuant to the settlement agreement and be credited to their eventual distributive share.

Appellant filed an answer to the petition for partial distribution which, *inter alia,* denied that petitioners were entitled to any funds and alleged that the major portion of liquid assets had been delivered to petitioners' former attorney pursuant to the settlement order.

On April 21, 1977, the court heard argument on the petition for partial distribution by attorneys for petitioners, the attorney for appellant, attorney Karcazes, who had filed a motion to dismiss the petition, pro se, and attorneys for others interested in the estate. The proceeding consisted solely of argument by counsel, and although many assertions of purported fact were made, no testimony or evidence of any kind was offered. Although the transcript of the proceeding is garbled and leaves much to be desired, the essential positions of the parties are revealed. Counsel for petitioners reiterated the allegations of their petition for partial distribution, emphasizing that petitioners were aged and in need, that they would be entitled to some funds no matter how the proceedings came out, and that between the funds in the hands of appellant and those in the hands of attorney Karcazes, there were sufficient assets in the estate to make a partial distribution without impairing the claims of creditors. In addition, counsel for petitioners informed the court that claimant, decedent's brother-in-law, would agree on the record to forego part of his claim so that petitioners could enjoy some of the fruits of the estate while petitioners still lived. Attorney Karcazes admitted that he held the stocks due petitioners under the settlement order and contended that petitioners could have taken those stocks, but instead chose to attack the settlement agreement. Counsel for appellant stated that appellant had only $11,000 on hand in the estate, approximately $6000 of which was to be used to pay another allowed claim.

The court indicated its belief that the $40,000 claim requested by petitioners was too much, but that there was more than enough money to take care of everyone in full and still permit a partial distribution of $10,000 to petitioners, who were in need and who would be entitled to at least that much in any event. Counsel for one of the other legatees asked whether a bond could be arranged, but the court indicated that a bond would not be necessary if claimant agreed to reduce his claim to the extent of the partial distribution in the event the estate's assets later proved insufficient to pay claims.

On May 10, 1977, counsel for petitioners submitted to the court a typed order reciting these facts and bearing claimant's signature in approval thereof. Handprinted in the margin was the following sentence: "It is further found and ordered by this court that this order is final and appealable and there is no just reason to delay enforcement or appeal therefrom." The order was signed and entered by the court on that same day.

On May 24, 1977, the court entered another order. The handwritten order, which was submitted by counsel for petitioners, set a hearing on appellant's discovery citation. It then gave appellant 10 days to answer the oral motion of petitioners' counsel as to why appellant should not be held in contempt for failing to pay $10,000 to petitioners pursuant to the court's order of May 10, 1977, and set a hearing on that motion. The order then recited that the paragraph in its May 10, 1977, order which recited that the May 10 order was final and appealable, "is vacated upon the court's own motion."

On that same day, May 24, 1977, at 1:15 p.m., appellant filed a notice of appeal "from the final order entered on May 10, 1977" ordering appellant to pay $10,000 to petitioners. Appellant prayed for reversal of the order.

The next document appearing in the record on appeal is a motion by the Madison Bank & Trust Company, filed June 1, 1977, alleging *inter alia* that it has an allowed claim for $5424; that estate assets have been distributed pursuant to the settlement order; that appellant has been ordered to distribute $10,000 from the estate; that this payment would render the estate unable to pay movant's claim; and that it was entitled to be paid first. The disposition, if any, of this motion is not contained in the record on appeal.

The other pertinent documents in the record consist of the following: appellant's answer to the contempt petition, alleging that the cash balance of the estate, $11,500, was insufficient to make the partial distribution and pay the allowed claim of the Madison Bank; appellant's praecipe for record; and the clerk's certification of the record, which states that the executor's current account was not included in the record because it could not be located.

On appeal, appellant urges that the court erred in ordering him to make a partial distribution without requiring a refunding bond when it was shown that the estate's assets would be insufficient to pay claims and specific bequests. Appellant contends that this result is compelled by section 24—4(a) of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 24—4(a)), which provides:

"(a) If it appears that there are sufficient assets to pay all claims against the estate of a decedent, the court may order the

representative to pay the distributive share to a distributee before the expiration of 6 months after the issuance of letters if the distributee gives bond to and for the indemnity of the representative in double the value of the distributive share to be paid, with surety to be approved by the court, conditioned to refund the due proportion of any claim entitled to be paid from the estate distributed together with the expenses of recovery, including reasonable attorneys' fees and additional expenses of administration."

Appellant also urges that petitioners have available to them the funds distributed pursuant to the settlement order which, until vacated, remains in effect.[1]

Petitioners point out that while the language of section 24—4(a) may be mandatory, by its terms it does not apply in this case since the court order occurred more than six months after the issuance of letters, in fact more than three years later, and therefore long after the time for filing claims against the estate had expired. (See Ill. Rev. Stat. 1977, ch. 110½, pars. 18—3, 18—12.) Petitioners in turn cite section 24—3(a) of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 24—3(a)), which pertinently provides:

"The court may enforce the settlement of estates. On every settlement the court may order the representative of a decedent's estate to pay the claims against the estate * * *. If it appears that there are sufficient assets to pay all claims against the estate the court may order the representative to distribute the estate to the persons entitled thereto."

Petitioners contend that under this section, both distribution and the filing of a bond are discretionary with the court when it appears that there are sufficient assets to pay the claims against the estate. Petitioners urge that the court's order should therefore be affirmed, because the court in its discretion was of the opinion that the estate's assets were sufficient and that a bond would not be necessary when claimant had agreed to reduce his claim, if necessary, in the amount of the partial distribution, and when it appeared that the distributees would be entitled to that amount in any event.

■■ Before we may reach the merits of the issues raised on appeal, we must *sua sponte* consider whether the trial court's order is final and appealable by the executor. Where there is no final and appealable order, it is the duty of the reviewing court to dismiss the appeal on its own motion (*Bell v. Home Federal Savings & Loan Association* (1976), 38 Ill. App. 3d 652, 348 N.E.2d 527), even though the question has not been

---

[1] Appellant's brief also reveals that one petitioner, Peter Tingos, has died during the pendency of this appeal.

raised by the parties. *E.g., Petersen Bros. Plastics, Inc. v. Ullo* (1978), 57 Ill. App. 3d 625, 373 N.E.2d 416; *W. B. Cohan Corp. v. City Properties Corp.* (1977), 49 Ill. App. 3d 300, 364 N.E.2d 303; *Johnson v. Coleman* (1977), 47 Ill. App. 3d 671, 365 N.E.2d 102.

■■ In general, with exceptions not here applicable, only final judgments are appealable as of right. (Supreme Court Rule 301, Ill. Rev. Stat. 1977, ch. 110A, par. 301.) In an action, such as the one at bar, involving multiple parties or claims, Supreme Court Rule 304(a) provides that an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a).) In the instant case, it is unclear which came first, the filing of the notice of appeal or the entry by the court of its order vacating its finding of appealability. If the filing of the notice of appeal came first, the jurisdiction of this court would have attached instanter and the trial court would have been divested of jurisdiction to vacate any relevant part of the order appealed from. (*E.g., Myers v. Myers* (1977), 51 Ill. App. 3d 830, 366 N.E.2d 1114; *Dear v. Dear* (1967), 87 Ill. App. 2d 77, 230 N.E.2d 386, *cert. denied*, 393 U.S. 871.) On the other hand, if the finding of appealability was vacated prior to the filing of the notice of appeal, while the absence of the finding is not necessarily fatal (see *Andros v. Hansen Realty Co.* (1976), 44 Ill. App. 3d 635, 358 N.E.2d 664), it is likely that the appeal would be dismissed as not in compliance with Rule 304(a) where there were other portions of the litigation pending. *City of Darien v. Dublinski* (1973), 16 Ill. App. 3d 140, 304 N.E.2d 769; *Peesel v. Peesel* (1973), 11 Ill. App. 3d 76, 296 N.E.2d 69; see, *e.g., In re Estate of Moeller* (1971), 133 Ill. App. 2d 327, 272 N.E.2d 787 (ruling on administrator's first current account not appealable absent a Rule 304(a) finding); but see Supreme Court Rule 304(b)(1), Ill. Rev. Stat. 1977, ch. 110A, par. 304(b)(1) (a judgment or order entered in the administration of an estate which finally determines a right or status of a party is appealable without the Rule 304(a) finding).

Because of the uncertainty surrounding the filing of the notice of appeal vis-a-vis the court's order vacating its findings of appealability, we would hesitate to dismiss the appeal on that ground. However, even assuming that the notice of appeal was filed while the finding was outstanding, it is well settled that the mere inclusion of a finding in an order does not make the order final and appealable. (*E.g., Cohen v. Sterling Nursing Home, Inc.* (1978), 57 Ill. App. 3d 162, 372 N.E.2d 934; *Coble v. Chicago Health Club, Inc.* (1977), 53 Ill. App. 3d 1019, 369 N.E.2d 188.) Rather, what is or is not a final appealable order requires analysis of the precise nature of the conflict between the parties and the effect that the judgment in question will have on the conflict. See *Casati v.*

*Aero Marine Management Co.* (1976), 43 Ill. App. 3d 1, 356 N.E.2d 826; *People ex rel. Pollution Control Board v. Lloyd A. Fry Roofing Co.* (1972), 4 Ill. App. 3d 675, 281 N.E.2d 757.

Initially we note that at the time notice of appeal in the case at bar was filed, May 24, 1977, section 26—1 of the Probate Act of 1975 provided: "An appeal from a final order or judgment of the court under this Act by any person who considers himself aggrieved may be taken in the same manner as in other civil cases." Effective September 20, 1977, section 26—1 was amended to provide simply that "[a]ppeals may be taken as in other civil cases." (Ill. Rev. Stat. 1977, ch. 110½, par. 26—1 as amended by P.A. 80-808, §1.) Under either statute, however, our analysis would remain the same: the order of partial distribution appealed from is neither final nor appealable by the executor.

In *McCollister v. Greene County National Bank* (1898), 171 Ill. 608, 49 N.E. 734, an administrator of an estate sought to appeal from an order directing him to inventory certain land as part of the decedent's estate and to apply for an order of sale for the land. The administrator contended that the decedent had only owned a life estate in the property. The court held, without reference to any statute, that the appeal must be dismissed for two reasons. First, the court held that the appellant administrator had no such interest as would entitle him to prosecute the appeal. Because the order operated against him only as administrator, he was not a party aggrieved by the order and therefore he had no appealable interest. (171 Ill. 608, 610, 49 N.E. 734.) Second, the court held that the judgment or order appealed from was only a preliminary and not a final order as against the administrator (171 Ill. 608, 611, 49 N.E. 734), though the court noted that if the order had been one denying the petition that the property be inventoried, the order would have been final as against the petitioner. 171 Ill. 608, 49 N.E. 734.

■■ While the order appealed from in the instant case differs from that in *McCollister*, we are of the opinion that the same analysis applies and that the appeal must be dismissed for the same two reasons. As to the finality of the partial distribution order, in *Kinne v. Schumacher* (1896), 65 Ill. App. 342, 345, the court stated: "An order of partial distribution is in no sense final, so as to deprive the court of the power of correcting errors, if any. It still retains jurisdiction of the subject-matter for all purposes."(65 Ill. App. 342, 345, cited in E. Leesman, *Distribution and Closing of the Estate*, 1951 U. Ill. L.F. 592, 606; see generally 5 W. James, Illinois Probate Law and Practice §330.3 (1951); but *cf. In re Estate of Smirniotis* (1947), 332 Ill. App. 440, 75 N.E.2d 384 (abstract) (heirs who were not parties of record could appeal from an order striking their petition to vacate an order of partial distribution and an order approving the final account and distribution).) In the instant context, we agree with the court in *Kinne* that

the order of partial distribution is in no sense final, because, as against the executor, it finally determines nothing. Moreover, even if a partial distribution order could be considered final in some contexts or as against some persons, we would nevertheless be confronted with the question of whether appellant, as executor, has such an interest as would entitle him to appeal from the order; that is, whether he has an appealable interest.

It is that question to which we now turn. While it has been held that an executor may appeal from an order of *final* distribution, involving a will construction (*Bennett v. Bennett* (1917), 282 Ill. 266, 118 N.E. 391), no Illinois case discussing the question of whether an executor may appeal from a partial distribution order while other litigation is pending in the estate has been found. In several cases involving orders of partial distribution and appeals by executors or administrators, upon closer examination the appeals are revealed to be from clearly final orders, such as an order overruling the executor or administrator's final report of distribution. (*In re Estate of Kapraun* (1959), 21 Ill. App. 2d 231, 157 N.E.2d 700; *Kinne v. Schumacher* (1896), 65 Ill. App. 342; see also *Wisdom v. Becker* (1869), 52 Ill. 342; *Shephard v. Clark* (1890), 38 Ill. App. 66.) However, there are cases in Illinois in which an executor or administrator did appeal from an order of partial distribution. *Reynolds v. People* (1870), 55 Ill. 328; *Murdock v. Murdock* (1903), 111 Ill. App. 375; *Sherman v. Saylor* (1890), 36 Ill. App. 356.) Nevertheless, in view of the ancient vintage of the cases and the absence therein of any indication of other pending litigation and of any discussion of the question of appealability, we do not feel concluded on the question.

Accordingly, we look to other jurisdictions which have expressly considered the question. The vast majority of cases in other States hold that an executor generally has no right to appeal from an order granting or denying partial distribution. (See Annot., 16 A.L.R.3d 1274, 1277, and numerous cases cited at 2378-80 (1967).) The rationale behind the rule is said to be that since the executor is in essence a stakeholder, he is not a party aggrieved by the partial distribution order and is not bound to litigate the conflicting claims of beneficiaries and creditors at the expense of the estate. (16 A.L.R.3d 1274, 1277.) In addition, in the absence of fraud, the court will protect an executor or administrator who distributes assets pursuant to court order (16 A.L.R.3d 1274, 1277; accord, *e.g.*, *Bosnak v. Murphy* (1960), 28 Ill. App. 2d 110, 170 N.E.2d 640), and therefore the executor has no interest in that regard. In the instant case, neither attorney Karcazes, who had filed a motion to dismiss the petition for partial distribution, nor the decedent's brother-in-law, who had an allowed claim, nor the Madison Bank, an allowed claimant also, nor any of the beneficiaries have sought to appeal from the order of partial distribution. Yet all would seem to have an interest that could potentially

be affected by the distribution, while appellant, as executor, has no such appealable interest.

■■■ There is an exception to the general rule which has been recognized in some States, chiefly the western States, permitting an executor to appeal from a partial distribution order where the order will render the estate's assets insufficient to pay claims. (Annot., 16 A.L.R.3d 1274, 1277, 1292 and cases cited therein; see also 16 A.L.R.3d 1274, 1287-91 (appeal also permitted in some western States where distribution order "affects the decedent's estate as a whole, apart from the conflicting interests of particular beneficiaries").) Even if we were to recognize this exception, based on the record before us we cannot find that appellant has established that the assets of the estate will be insufficient to pay creditors' claims. It is well settled that the party attacking a judgment on appeal must present sufficient facts to support its claim that the trial court erred; where the record is incomplete in its presentation of facts, the court on appeal will presume any state of facts embraced by the pleadings and not inconsistent with the record which will sustain the order on appeal. (*E.g.,* *In re Shannon* (1977), 45 Ill. App. 3d 876, 360 N.E.2d 433.) Based on the scanty record on appeal in the instant case, we cannot conclusively determine whether or not the estate's assets are sufficient to make the disputed partial distribution, and it appears at least as likely that there are ample assets. Even if we wished to determine the question from the record ourselves, we would be unable to do so, as the only account filed by the executor was not included in the record because it could not be located. The fact that appellant in his praecipe requested inclusion of the account does not relieve him of his burden as appellant to present all material essential to the disposition of the appeal. (*Angel v. Angelos* (1976), 35 Ill. App. 3d 905, 342 N.E.2d 748.) Appellant could have attempted to adduce evidence as to the condition of the estate in the court below, but he did not do so, nor did he show that the assets due petitioners and distributed pursuant to the settlement order are unavailable to him. The unsupported assertions of his counsel in oral argument in the court below and in his briefs in this court cannot supplement the record in this regard. *E.g., Witek v. Leisure Technology Midwest, Inc.* (1976), 39 Ill. App. 3d 637, 350 N.E.2d 242.

We therefore hold that as to appellant, the order appealed from is neither final nor appealable. While it might also be proper to affirm the order of the court below (*cf. Angel v. Angelos* (1976), 35 Ill. App. 3d 905, 342 N.E.2d 748), particularly in a case such as this, where the appellant's ultimate right to prevail would seem to hinge at least in part on the same facts as his right to appeal, in our judgment the appeal should be dismissed.

On the authority of *McCollister v. Greene County National Bank* (1898), 171 Ill. 608, 49 N.E. 734, and based on the above reasoning, the appeal is hereby dismissed.

Appeal dismissed.

PERLIN and HARTMAN, JJ., concur.