UNITED AIR LINES, INC., Plaintiff-Appellant and Cross-Appellee, v. CEI INDUSTRIES OF ILLINOIS, INC., *et al.*, Defendants-Appellees (GATES ENGINEERING COMPANY, INC., Defendant-Appellee and Cross-Appellant).

First District (5th Division) No. 85—2213

Opinion filed October 3, 1986.

Gardner, Carton & Douglas, of Chicago, and Stephen Sawyer and John Nicholson, both of United Air Lines, Inc., of Elk Grove Village (Michael J. Koenigsknecht, Stephen P. Bedell, and Thaddeus J. Nodzenski, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom, David W. Kash, and Shaun McParland, of counsel), for appellee CEI Industries of Illinois, Inc.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Mayer Goldberg, Michael W. Duffy, and Lisa Marco Kouba, of counsel), for appellee Owens-Corning Fiberglass Corporation.

James R. Clune, of Sweeney & Riman, Ltd., of Chicago, for appellee Allied Roofers Supply Corporation.

JUSTICE MURRAY delivered the opinion of the court:

This appeal arises from the installation of a defective roof on plaintiff United Air Lines, Inc.'s (United's), executive office building in Elk Grove Village. United appeals from two orders of the circuit court of Cook County dismissing the negligence and implied-warranty counts of its first amended complaint seeking damages and striking and dismissing its claims for prejudgment interest and attorney fees from all counts. Defendant Gates Engineering Company, Inc. (Gates), the supplier of the roofing system, cross-appeals from that portion of the court's order denying its motion to dismiss an express-warranty count filed against it by United. United has filed a motion to dismiss Gates' cross-appeal which has been taken with the case.

On October 5, 1982, United and defendant CEI Industries of Illinois, Inc. (CEI), entered into a construction contract whereby CEI was to supply all labor, material, and equipment to remove an existing roof and install a new one on United's office building. Through CEI, United purchased defendant Gates' GACOFLEX roofing system. The system consists of outer-roof membrane materials manufactured by defendant AGR Company (AGR), urethane roof-insulation materials manufactured by defendant Owens-Corning Fiberglass Corporation (Owens), and various glues, solvents, pastes and other adhesives used in applying the system. Defendant Allied Roofers Supply Corporation (Allied) was "primarily a supplier of the GACOFLEX roofing materials."

On October 18, 1982, CEI commenced performance of the con-

struction contract. During installation of the new roof, repeated water leaks from the roof to the interior ceilings of the building were reported by United to CEI and each time CEI assured United that all problems causing the leaks had been "rectified." Following completion of the roof in February 1983, water leaks continued to occur. On December 24, 1983, the interior ceiling of an office in the building collapsed, damaging United's "furniture, furnishings, desks, chairs and other miscellaneous objects." No employees were in the office at the time.

Upon the various defendants' alleged refusal to respond to United's repeated demands to replace the roof and compensate United for damage to other property caused by the ceiling's collapse, United subsequently filed a 17-count first amended complaint (complaint) against defendants seeking damages in excess of $500,000. Counts I through VII are not involved in this appeal. Count VIII alleges a breach of an express warranty by Gates. Counts IX through XVI allege breaches of implied warranties of merchantability and fitness by Gates, AGR, Owens and Allied. Count XVII is a claim for negligence against all defendants.

In response, defendants filed various motions to dismiss. All defendants moved to dismiss United's negligence count upon the theory that a tort action is not an appropriate remedy where United's damages are solely economic losses which are not recoverable in tort pursuant to *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443. Gates, AGR, Owens and Allied also moved to dismiss United's implied-warranty claims on the ground that United lacked privity of contract or any direct relationship with them. Gates and AGR further moved to dismiss the warranty claims based upon their contention that they only provided services, not goods, and that their contracts therefore are not subject to the warranty provisions of the Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 2—101 *et seq.*). Gates also moved to dismiss count VIII of United's complaint which alleged breach of an express warranty by Gates.

On July 20, 1985, the trial court dismissed United's negligence count with prejudice on the ground that its damages were solely economic losses precluded from recovery in tort pursuant to *Moorman.* The court also struck and dismissed United's claims for prejudgment interest and attorney fees with prejudice from all counts. On July 16, 1985, the court dismissed United's implied-warranty counts without prejudice on the ground that United failed to allege facts sufficient to support a contract action against defendants based upon a "third-

party beneficiary theory, direct relationship theory, *** [or] knowledge of [a] purchaser's intended use theory." In the same order the court denied Gates' motion to dismiss United's express-warranty count against it, stating that a question of fact existed as to this claim. In both orders the trial court found there was no just reason for delaying enforcement or appeal pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)).

## I

■■ We first address United's argument that the trial court erred in dismissing its negligence count for failure to state an injury recoverable in tort. We agree. For purposes of ruling on a motion to dismiss, all well-pleaded facts contained in a complaint must be taken as true and all inferences therefrom must be drawn in favor of the nonmovant. (*Palatine National Bank v. Charles W. Greengard Associates, Inc.* (1983), 119 Ill. App. 3d 376, 456 N.E.2d 635.) A complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings entitling a plaintiff to relief. (119 Ill. App. 3d 376, 378, 456 N.E.2d 635.) A complaint which alleges a sudden and calamitous occurrence caused by a defect in a product which results in personal injury or damage to property other than the defective product states a cause of action in tort. *Vaughn v. General Motors Corp.* (1984), 102 Ill. 2d 431, 466 N.E.2d 195.

On appeal, it is undisputed that the cause of the collapse of United's ceiling resulted from water leaks in the defective roof. On the other hand, although both United and defendants rely upon *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, as dispositive of United's negligence count, they disagree concerning its application. United argues that its property damages resulted from "sudden and substantial" water leaks occurring after completion of the defective roof which caused the "sudden and violent collapse" of its ceiling and that these damages, therefore, are not barred by the economic-loss doctrine of *Moorman*. Defendants counter that United's damages were caused by a qualitative defect in the roof, the water leaks, resulting in a "gradual" accumulation of water entering through the defective roof prior to and after completion and thus are economic losses precluded from recovery in tort pursuant to *Moorman*.

In *Moorman*, the plaintiff sought recovery of damages for the cost of repairs and loss of use of a grain storage tank after a crack in it was discovered while emptying its contents approximately 10 years

after its purchase. The plaintiff did not seek damages for personal injury or other property damages, nor were there any. In determining that the plaintiff's damages were solely economic losses not recoverable in tort, the court recognized that when a defect in a product is "of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality, *** contract, rather than tort, law provides the appropriate set of rules for recovery [and this rule applies whether the tort theory involved is strict liability or negligence]." (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 86, 88, 435 N.E.2d 443.) The court further noted that economic losses are " 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—*without any claim of personal injury or damage to other property* ***' [citation]." (Emphasis added.) 91 Ill. 2d 69, 82, 435 N.E.2d 443.

With respect to damages for personal injury or other property damages, however, the court went on to point out:

> "[W]hen a product is sold in a *defective condition that is unreasonably dangerous to the user or consumer or to his property*, strict liability in tort is applicable to physical injury to plaintiff's property, as well as to personal injury. *When an unreasonably dangerous defect is present,* *** [such as a truck's non-functioning brakes], and physical injury does, in fact, result,* then '[p]hysical injury to property is so akin to personal injury that there is no reason to distinguish them.' [Citations.] This comports with the notion that the essence of a product liability tort case is not that the plaintiff failed to receive the quality of product he expected, *but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property.*" (Emphasis added.) (91 Ill. 2d 69, 81, 435 N.E.2d 443.)

In focusing on the element of causation to determine the type of loss involved, the court further stated, "The demarcation between physical harm or property damage on the one hand and economic loss on the other usually depends on the nature of the defect and the manner in which the damage occurred." *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 82, 435 N.E.2d 443. It also observed:

> " 'When the defect causes an accident "involving some violence or collision with external objects," the resulting loss is treated as property damage. On the other hand, when the damage to the product results from deterioration, internal breakage, or

other non-accidental causes, it is treated as economic loss. \*\*\*. (Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 918 (1966).)' " (Emphasis added.) 91 Ill. 2d 69, 83, 435 N.E.2d 443.

As examples of whether damages are appropriately deemed economic loss or property damage, the *Moorman* court relied upon *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.* (3d Cir. 1980), 626 F.2d 280, *Cloud v. Kit Manufacturing Co.* (Alaska 1977), 563 P.2d 248, and *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F. 2d 1165. In *Jones & Laughlin*, where portions of a roof buckled and blew away over the course of time, the plaintiff did not seek damages for any injuries that may have occurred to property other than its roof from water falling upon its machinery below, but rather sought only repair and replacement costs of the roof. The court disallowed the plaintiff's claims under both strict liability and negligence theories, holding that damage caused by the defective condition of the roof was the type of problem warranties were designed to address.

On the other hand, *Cloud* and *Pennsylvania Glass* presented instances where damages resulting from a defect in a product were recoverable in tort based on a sudden and calamitous or dangerous occurrence. In *Cloud*, the plaintiffs sought damages for the loss of their mobile home, personal belongings, and furniture destroyed by a fire caused by the ignition of polyurethane rug padding which was included in their "mobile home package" and had been stored in a crawl space beneath the trailer. The *Cloud* court held that this type of "sudden and calamitous damage" was recoverable in tort.

Similarly, in *Pennsylvania Glass*, the plaintiff sought damages for the repair and replacement of a front-end loader which were caused by a fire—"a sudden and highly dangerous occurrence." In holding that the plaintiff's damages constituted physical injury recoverable in tort, rather than mere economic loss, the court emphasized that "tort law imposes a duty on manufacturers to produce safe items, regardless of whether the ultimate impact of the hazard is on people, other property, or the product itself." 652 F.2d 1165, 1172-73.

█ In the instant case, United alleged in paragraph 168 of count XVII that as a result of defendants' negligence there occurred a series of "sudden and substantial" water leaks to the interior of the building "which caused collapses of ceilings, substantial damages to walls, furniture, furnishings and further endangered the safety of United's employees upon the premises." In paragraph 171, United further alleged "that the defective condition of the roof directly

caused the 'sudden and violent collapse' of interior ceilings, which suddenly and violently fell upon and collided with United's personal property, *** resulting in property damage and destruction." In response, defendants contend that the collapse of the ceiling was not a sudden and calamitous occurrence. They argue that the alleged "gradual" accumulation of water resulting from water leaks in the roof, which occurred over a long period of time during and after its installation, and United's awareness of the condition negate the happening of a sudden and calamitous collapse of the ceiling.

Contrary to defendants' argument, we believe that, in accordance with *Moorman* and cases cited therein, we must look to the suddenness of the *occurrence of an event*—the point when the injury occurs (a fire, overturning of a truck, collapse of a ceiling)—where such occurrence causes personal injury or damage to property external to the defective product which exposes a party to an unreasonable risk of injury to himself or his property, rather than the suddenness or length of time within which the *defect or cause of the occurrence* develops (ignition of polyurethane padding, locking wheel brakes, water leakage) and manifests itself in the sudden and calamitous occurrence. For example, in *Vaughn v. General Motors Corp.* (1984), 102 Ill. 2d 431, 466 N.E.2d 195, the plaintiff's truck overturned when its wheel brakes suddenly locked. The court held that the fact that the plaintiff allegedly was aware of the faulty condition of his truck's brakes, and "chose to live with it" over a 19-month period, was only relevant to the issues of assumption of risk and comparative fault, neither of which was an issue in the appeal. Thus, the existence of the continuing defect in the brakes and the plaintiff's awareness of the condition for 19 months prior to the defect manifesting itself in the subsequent accident had no effect on the plaintiff's right to pursue an action in tort for repair and replacement damages.

■ This result is further supported by *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324, where the plaintiff sought damages to his home caused by a latent construction defect. Although the court held that the plaintiff's damages were due to inferior workmanship leading to eventual deterioration and, thus, solely economic losses, it indicated that had the plaintiff suffered personal injury or other property damage he would have been entitled to recover in tort. Specifically, the court stated:

> "This is not a case where defective construction created a hazard that resulted in a member of the plaintiff's family being struck by a falling brick from the chimney. The adjoining wall has not collapsed on and destroyed the plaintiff's living room

furniture. The plaintiff is seeking damages for the costs of replacement and repair of the defective chimney, adjoining wall and patio. While the commercial expectations of this buyer have not been met by the builder, the only danger to the plaintiff is that he would be forced to incur additional expenses for living conditions that were less than what was bargained for." (92 Ill. 2d 171, 178, 441 N.E.2d 324.)

In light of the above, had the plaintiff's damages been as the court hypothesized, we believe the time-related deterioration would not have had any effect on the court's determination, under those circumstances, that the plaintiff's damages were not economic losses but rather damages recoverable in tort. In other words, when a sudden and dangerous event occurs resulting in personal injury or property damage, as well as economic loss, an otherwise qualitative defect, which develops or manifests itself either gradually or suddenly, loses its inflexible classification as such in the realm of the economic-loss doctrine, and tort, rather than contract, law is the appropriate remedy for damages caused by the defect.

In conclusion, unlike the damages in *Redarowicz* and *Moorman*, in the instant case United did suffer damages to property other than the defective product as a result of the water-leakage defect in the roof which caused the sudden and violent collapse of its interior ceiling upon its walls, furniture, and furnishings. United has thus made a showing of harm above and beyond disappointed expectations. (See *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 177, 441 N.E.2d 324.) Also, the only danger to United was not that it would be forced to incur additional expenses for a roof that was less than what was bargained for—the defect here exposed United to an unreasonable risk of injury to its employees and property. (See also *Bi-Petro Refining Co. v. Hartness Painting, Inc.* (1983), 120 Ill. App. 3d 556, 458 N.E.2d 209 (*Moorman* did not preclude recovery for otherwise economic damages for negligent repair of a ruptured oil tank when the product failed to fulfill its intended purpose where the failure resulted in a sudden and violent occurrence).) Furthermore, like the situation in *Vaughn*, the fact that United was aware of the continuing leakage problem is only relevant to assumption of risk and comparative fault, which are issues not before us.

Accordingly, whether the water causing the collapse of the ceiling gradually accumulated or, as United argues,. "suddenly" poured in upon the interior ceiling, the fact remains that the manner in which the ceiling collapsed was sudden and calamitous, exposed United and its employees to an unreasonable risk of injury, resulted in damage to

property other than the roof, and was caused by the defect in the roof. United's damages therefore are recoverable in tort.

■ Additionally, although CEI argues that United's claim for "incidental" property damages other than those to its roof does not transform United's contract claims into a tort action and Gates argues that its property damages are *de minimus,* we reiterate that where a defective condition of a product is unreasonably dangerous to a user or his property "and physical injury to his property does, in fact, result, then '[p]hysical injury to property is so akin to personal injury that there is no reason to distinguish them.' " (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 81, 435 N.E.2d 443.) Nor do we see any reason here to distinguish between United's property damages as defined pursuant to *Moorman* and CEI's or Gates' characterization of United's damages as merely "incidental" or *de minimus* damages in light of the above discussion on this issue. We also briefly note that the cases relied on by defendants in support of their arguments that United's property damages are solely economic losses are distinguishable and generally involved situations where no personal injury or damage to property other than the defective product occurred.

■ Accordingly, since all well-pleaded allegations of a complaint are to be taken as true and all inferences therefrom drawn in favor of the nonmovant for purposes of a motion to dismiss, we find that the trial court erred in dismissing United's negligence count pursuant to CEI's section 2—615 motion to dismiss (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) and the other defendants' similar motions, and hold that count XVII states an injury recoverable in tort. In light of the foregoing, we do not address United's additional argument that "even if *** [it] only suffered economic losses, they are recoverable in tort if: (1) the defendants are negligent; and (2) contract or warranty recovery is unavailable."

## II

■ United next argues that the trial court erred in dismissing its claims for attorney fees.[1] It contends that it is entitled to attorney fees because: (1) CEI violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et*

---

[1]On appeal, United has failed to raise its claim for prejudgment interest in its brief and it is therefore waived pursuant to Supreme Court Rule 341(e)(7), which provides that "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." (87 Ill. 2d R. 341(e)(7).)

*seq.*); (2) its contract with CEI specifically provided for recovery of attorney fees; and (3) CEI's "wanton and wilful misconduct" has forced it into litigation with third parties.

Our review of the record indicates that the trial court's dismissal of United's claims for attorney fees "with prejudice" directly resulted from United's failure to present relevant facts to the court concerning this issue. At the hearing on this issue, United's counsel argued that it would be entitled to attorney fees if the ultimate evidence disclosed "wilful and wanton misconduct." The trial court advised United's counsel that there were no allegations in the complaint asserting wilful and wanton misconduct and that that was "an issue outside of the case." After the court granted the motion to strike and dismiss this claim, the following colloquy occurred:

"MR. DUFFY [Owens' attorney]: Would that be something as to all counsel because that's a universal prayer.

THE COURT: Yes. If there's a provision in the contract that allows attorney's fees, I will reverse myself. But I don't think there is.

MR. BEDELL [United's attorney]: Your Honor, you would permit us to come in to modify or vacate that portion if the contract permitted it?

THE COURT: Certainly.

MR. BEDELL: I take it, your Honor, you're not holding that we would not be able to amend our pleadings to conform to the proofs in the event we proved willful and wanton conduct?

THE COURT: First of all, I don't think I would have the ability to rule upon that. And second of all, I think your option now is to appeal this decision or waive it.

MR. BEDELL: May we have a finding in the order then as to that aspect of the order, there is no just reason to its delay [*sic*] enforcement or appeal?

THE COURT: Yes, all right."

It is well established that a party cannot complain of an error which it commits, invites or induces a trial court to make. (*In re Estate of Bania* (1984), 130 Ill. App. 3d 36, 473 N.E.2d 489.) In addition, "an appellate court should not, and will not, consider different theories or new questions, if proof might have been offered to refute or overcome them had they been presented at trial." (*Hux v. Raben* (1967), 38 Ill. 2d 223, 225, 230 N.E.2d 831.) Here, United apparently prepared the order dismissing "with prejudice" its "universal" prayer for relief for attorney fees from all counts, notwithstanding the fact

that the trial court stated that it would reverse itself if it was informed that there was a provision in the contract allowing attorney fees. At that time United could and should have apprised the court that such a provision existed, just as it should have informed the court of its statutory claim for fees under the Consumer Fraud and Deceptive Business Practices Act contained in count VII and that its wilful and wanton allegation was based upon that statute. As a result of United's acts and omissions, it cannot now be heard to complain because of its own errors. Accordingly, we affirm the trial court's order denying attorney fees.

### III

United's final arguments concern its implied-warranty claims against Gates, AGR, Owens and Allied and express-warranty claim against Gates. Initially, United argues that the trial court erred in dismissing its implied-warranty counts, IX through XVI, for failure to state a cause of action in contract.

■ Before we consider the merits of United's argument and defendants' response thereto, we must first *sua sponte* determine whether the trial court's order is final and appealable. (*In re Estate of Tingos* (1979), 72 Ill. App. 3d 703, 390 N.E.2d 1349.) "Where there is no final and appealable order, it is the duty of the reviewing court to dismiss the appeal on its own motion, *** even though the question has not been raised by the parties." (72 Ill. App. 3d 703, 708-09, 390 N.E.2d 1349.) Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) requires that where "multiple parties or multiple claims for relief are involved in an action, *** [no] appeal may be taken from a final judgment as to one or more but fewer than all the parties or claims *** [unless] the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal." (See also *Ferguson v. Riverside Medical Center* (1986), 111 Ill. 2d 436, 490 N.E.2d 1252.) However, "it is well settled that the mere inclusion of a finding in an order does not make the order final and appealable. *** Rather, what is or is not a final appealable order requires analysis of the precise nature of the conflict between the parties and the effect that the judgment in question will have on the conflict." *In re Estate of Tingos* (1979), 72 Ill. App. 3d 703, 709, 390 N.E.2d 1349.

■ Here, although the trial court dismissed United's implied-warranty counts "without prejudice," it also stated in its order that there was no just reason for delaying enforcement or appeal of the order. A review of the trial court's memorandum opinion with respect to this order reveals, however, that it indicated that it would entertain an

amended complaint upon motion timely made and moved to hearing. Additionally, the order does not dismiss the cause as to Owens, AGR or Allied despite the fact that these counts are the only ones directed at them. Nor is there any indication that United elected to stand on the counts stricken.

Moreover, we note that if further discovery reveals that the contracts between Gates, Owens, AGR or Allied and CEI, which United has been unsuccessful in obtaining, reveals an intention to make United a direct, rather than an incidental, beneficiary (see *People ex rel. Resnik v. Curtis & Davis Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 400 N.E.2d 918), United could amend its pleading before or after judgment to conform its pleadings to the proofs (Ill. Rev. Stat. 1985, ch. 110, par. 2—616).

In light of the above, we conclude that the order dismissing United's implied-warranty counts is not final or appealable. Based on our disposition of this issue, it is unnecessary to address any further arguments by the parties on this issue.

■■ Similarly, we find that the second part of the order denying Gates' motion to dismiss United's express-warranty claim against it is also nonfinal and nonappealable. At the time of entry of the order, the trial court granted Gates 28 days within which to answer or otherwise plead and there is no indication in the record, nor was there any at oral argument, that Gates elected to stand on its motion to dismiss. Moreover, a final order must dispose of the rights of the parties upon the entire controversy or some definite part thereof. (*Savage v. Schoenstadt* (1979), 68 Ill. App. 3d 552, 386 N.E.2d 339.) Here, no rights of the parties have been adjudicated on this issue. Nor does the rule that an appeal from a subsequent final judgment "draws in question all prior non-final orders which produced the judgment" (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433, 394 N.E.2d 380) apply here. Gates is not appealing from an order which *produced* the orders dismissing United's negligence and implied-warranty claims. The rulings on those claims are completely independent; one does not depend on the other. Accordingly, we hold that the trial court's order denying Gates' motion to dismiss the express-warranty count of United's complaint is not final or appealable.

For the foregoing reasons, therefore, the order of June 20, 1985, dismissing United's negligence count and striking and dismissing its prayer for prejudgment interest and attorney fees, is affirmed in part, reversed in part, and the cause remanded for further proceedings as to count XVII. The appeal from the order of July 16, 1985, dismissing United's implied-warranty counts and denying Gates' motion to dis-

miss the express-warranty count, is dismissed, as is Gates' cross-appeal, and United's motion to dismiss Gates' cross-appeal is, accordingly, granted.

Appeal from order of June 20, 1985—affirmed in part, reversed in part and cause remanded.
Appeal from order of July 16, 1985—dismissed.
Cross-appeal—dismissed.

SULLIVAN, P.J., and LORENZ, J., concur.